## SUMMERS v. DICKINSON et al.

Immediately upon the passage of the act of Congress of September 28, 1850, this State became the owner, with absolute power of disposition, of all the swamp lands within her limits which had not been disposed of.

The title of the State in no way depends upon a patent. The act itself operated as a conveyance.

The Governor in issuing a patent to an individual, of such lands, acts as the agent of the State, under powers conferred by statute, and his authority extends only to such lands as were granted to the State by the act of Congress.

A patent from the Governor, purporting to convey the lands of the State, can have no validity unless expressly authorized by law.

Such a patent is *prima facie* evidence of title in the grantee, as the law presumes in favor of the acts of all public officers.

APPEAL from the District Court of the Thirteenth Judicial District, County of Stanislaus.

This was an action of ejectment for certain land in Stanislaus county. On the trial below, plaintiff offered in evidence a patent from the Governor of California, issued under the act of April, 1855, providing for the sale of swamp and overflowed lands. This evidence was rejected on the ground that no patent was shown to have issued from the United States, conveying such land to the State of California, and a judgment of nonsuit entered, from which plaintiff appealed.

*L. Quint* for Appellants.

The Court erred in refusing to admit the patent as evidence of title, for the following reasons:

The act provides that the swamp and overflowed lands belonging to this State should be sold at one dollar per acre, and in the manner prescribed by the act. (See Statutes of 1855, p. 189, § 1.) Every provision of said act has been strictly complied with by the appellant.

This State is supreme within its own sphere, as an independent sovereignty, and has the right to determine what shall constitute evidence of title as between her own citizens, to all the lands within her boundary. People v. Coleman et al., 4 Cal. R., 46; Nims v. Johnson et al., 7 Cal. R., 110. This latter decision is conclusive of this case. Thatcher v. Peck, 6 Cranch, 87, 127.

A patent to land shall be presumed to have issued regularly, and, if it be not void on its face, can not be avoided collaterally in

a suit between individuals, unless it issue against the positive prohibition of a statute. Jackson v. Marsh, 6 Cow. R., 281; People v. Livingston, 8 Barb. R., 253; People v. Muran et al., 5 Denio R., 389; Jackson v. Lawton, 10 Johns. R., 23; Browne v. Calloway, 1 Peters R., 291; 6 ib., 727.

The legal presumption is that the Surveyor, Register, Governor, and Secretary of State, have done their duty in regard to the several acts necessary to be done by them in granting lands. 1 Cow. & Hill's Notes to Philips' Ev., 459; Wallace v. Maxwell, 1 J. J. Marsh. Ky. R., 447, 450; 2 Cow. & Hill's Notes, 270.

Officers authorized to ascertain and certify certain facts, those facts when found and certified to are conclusive. 2 Cow. & Hill's Notes, 247, 270.

No brief on file for Respondent.

TERRY, C. J., delivered the opinion of the Court—FIELD, J., and BURNETT, J., concurring.

The points taken by appellant in his argument, are:

1. The State, by virtue of her sovereignty, is the owner of all the public domain within her jurisdiction, and that her title to the land in question passed to plaintiff by virtue of the patent.

2. The patent is conclusive evidence of everything it purports to contain.

The question as to the ownership of the public domain within the State is not pertinent to any issue raised by the record.

By the act of Congress "to enable Arkansas and other States to reclaim the overflowed lands within their limits," passed September 28, 1850, all the swamp lands within her limits which had not before been disposed of, were granted to the State of California.

Provision was made in the act for the survey of those lands, and for the issuance of a patent to the State whenever their extent and boundaries were ascertained. But the title of the State in no way depends on the patent. The act itself operated as a conveyance.

The language of the act is explicit: "the whole of those swamp and overflowed lands, etc., *are hereby granted to said State;*" and, immediately upon its passage, the State became the owner of the land, with absolute power of disposition.

The Legislature, by the act of April, 1855, provided for a sale of these lands, and authorized the Governor to issue patents in favor of persons purchasing under the act. In issuing patents, the Governor acted as the agent of the State, under the powers conferred by the statute; his authority extended only to such lands as were granted to the State by the act of September, 1850; and a patent issued by him, for any land not embraced in this grant, would be void, for want of power to convey.

The ancient doctrine, as to the effect of a patent from the Sovereign does not apply to the patent under consideration.

The theory of the common law is, that the King, by virtue of his sovereignty, is the owner of all the lands within the realm; therefore, a grant directly from the King is conclusive evidence of title.

The sovereignty of the State of California is represented by the law-making power; the property of the State can be disposed of only by act of the Legislature; and a patent from the Governor, purporting to convey the lands of the State, can have no validity unless expressly authorized by law.

The patent offered by the plaintiff, purported to convey the land in controversy as a portion of the domain granted to the State by the act of September, 1850; and as the law presumes in favor of the acts of all public officers, it should have been admitted as *prima facie* evidence of title in the plaintiff, which the defendant might disprove, by showing that the land in question was not included in the act of Congress, or is within the exceptions contained in the eighteenth section of the act of the Legislature of 1855.

Judgment reversed, and cause remanded.