ABRAM BLAKESLY AND THERESA BLAKESLY, APPELLANTS, *v.* FRANCIS CAYWOOD AND J. C. CAYWOOD, RESPONDENTS.

THE DONATION ACT IS A PRESENT GRANT.—The language of the Donation Act of September 27, 1850, operated in favor of the actual settler, who was under no disability, as a present grant, and vested in the donee a legal title to the land before the issuing of the patent.

IDEM—DONEE TAKES UPON CONDITIONS SUBSEQUENT.—By the operation of the Donation Act the donee acquires the land in fee subject to the conditions specified in the Act. They are conditions subsequent, and it is in the power of the donee to render the estate absolute by performance of the conditions.

IDEM—GRANT IS NOT VOID WHERE ALIEN DIES BEFORE NATURALIZATION.—The proviso in the fourth section of the Act that no alien shall be entitled to patent until he becomes naturalized does not render the grant void upon the death of such alien without naturalization.

APPEAL from Marion County.

The facts are stated in the opinion of the Court.

*John Kelsay, R. S. Strahan and Boise & Willis,* for Appellants.

The Donation Law is in words of present grant. (2 Ogn. R. 266; 12 How. 75.)

Charles P. Matt, up to the time of his death, had complied with all the terms and conditions of the Donation Law. The widow and heirs in such case take the share or interest of the deceased in equal proportions. (Donation Law, ? 4.)

The plaintiff, Theresa, was born in Oregon, December 26, 1849, and was and is a citizen of the United States. (1 Sandf. Ch. 583, 639: 1 Abbott's Dig. p. 63, ? 11; 2 Kent's Com. 16.)

The widow and heirs, being citizens, could demand the patent without proof of their citizenship; they take as purchasers of the United States. (*Fields* v. *Squires,* Deady, 383; 2 Black. Com. 1.)

The Donation Law is to be construed liberally in favor of the grantees. (*Silver* v. *Ladd,* 7 Wallace, 224.)

*Mallory & Shaw,* for Respondents.

The latter clause of the first provision of ? 4 of the Act of September 27, 1850, applies only to those aliens who made their declaration of intention after the passage of the Act. This proviso confers a special privilege upon the heirs which was not possessed by the ancestor; they could obtain patent without proof of naturalization.

Without a special provision the heir cannot take by descent a greater estate than the ancestor held. The ancestor, Matt, could take no title to the land until he produced record evidence of his naturalization. If that was necessary for him, it is necessary for the heirs to make the same showing.

The relation of the United States with Great Britain, growing out of the joint occupancy of the Territory of Oregon, did not tend to promote friendly feelings between the citizens of the two countries.

British subjects in Oregon had no sympathy with the
United States Government, therefore it was not the policy
of the United States to give them land. If the United
States had bounties to bestow they proposed to make citi-
zens, and not aliens, the recipients of them. Aliens then
in the country would accept the grant and insist upon their
loyalty to a foreign power. It was to deprive them of that
right that this proviso was inserted into the fourth section.
The debates in Congress, at the time the law was before it
for its consideration, show what was intended by the lan-
guage of the proviso. (Speeches of Humphrey Marshall,
Samuel R. Thurston, James B. Bowlin and Willard P. Hall,
Part 2, 1st Session, 31st Congress, Cong. Globe, 1078, 1080;
Speech of Cyrus L. Dunham, Id. 1094; Marshall's Amend-
ment, Id. 1095; Discussion on motion to strike out Amend-
ment, Id. 1096; Speeches of Dawson, Douglas, Benton and
Felch, Id. 1845, 1846.)

By the Court, UPTON, C. J.:

This is a suit to compel the defendants to convey to the
plaintiffs a parcel of land claimed under the Donation Act
of September 27, 1850. The defendants demurred to the
complaint, stating as ground of demurrer that it does not
state facts sufficient to constitute a cause of suit, and the
Circuit Court having sustained the demurrer, the plaintiffs
appeal to this Court.

The plaintiffs claim through Charles P. Matt, the father of
the plaintiff, Theresa Blakesly, who settled upon the land in
controversy in 1844, and continued to reside upon it with
his wife until 1851, at which time he died intestate, leaving
a widow and an only child—the plaintiff Theresa. The de-
fendant claims under one G. W. Taylor, who entered upon
the land after the death of Charles P. Matt, and has since
obtained a patent for the land from the United States.

The complaint sets out fully the proceedings taken by
Matt and by Taylor in their efforts respectively to obtain
title from the Government, and the sufficiency of the plead-
ing depends upon an alleged disability on the part of Charles
P. Matt, and those claiming under him, to take and hold the

lands as a donation. Charles P. Matt was not a native of the United States, and never became naturalized, but in the year 1849 he declared his intention to become a citizen, and his daughter, the plaintiff, is a citizen of the United States. The question of disability—the only controverted question in the case—rests, upon the construction to be given to the several provisions of the Donation Act bearing upon the rights of aliens and those claiming under them. Section 4 of the Act specifies the qualifications of the donee in this respect, in the following language: "Being a citizen of the United States, or having made a declaration, according to law, of his intention to become a citizen, or who shall make such declaration on or before the 1st day of December, 1851."

The same section contains the following:

"*Provided*, that no alien shall be entitled to a patent for lands granted by this Act, until he shall produce to the Surveyor-General of Oregon record evidence that his naturalization as a citizen of the United States has been completed. But if any alien having made his declaration of an intention to become a citizen of the United States after the passage of this Act, shall die before his naturalization shall be completed, the possessory right acquired by him under the provisions of this Act, shall descend to his heirs at law, or pass to his devisees, to whom, as the case may be, the patent shall issue."

One of the principal inquiries involved in this case is whether this explicit declaration that no alien shall be entitled to a patent until he shall produce evidence of his naturalization, is to be regarded as annexing a condition to the estate granted, the breach of which will amount to a forfeiture and annul the grant. If by the terms of the Act nothing passed to the donee until the issuing of the patent, the subject would be easily disposed of; for in that case, denying a patent would be denying all right and interest in the land. If becoming a citizen was thus made a condition precedent, the proposed grant would become a nullity upon the death of the party without naturalization. But in this case, Charles P. Matt, being qualified as a donee

within the terms of the Act, and being settled on the premises at the time, a present interest in the land passed directly to him by the terms, "there shall be and hereby is granted to every white settler or occupant of the public lands * * * having made a declaration, according to law, of his intention to become a citizen of the United States * * * now residing in said territory, and who shall have resided upon and cultivated the same for four consecutive years, and shall otherwise conform to the provisions of this Act, the quantity of one-half section, or three hundred and twenty acres of land." It is, I think, too well settled to be open to argument that in favor of the actual settler, who was under no disability, this language operated as a present grant, and vested in the donee a legal title to the land before the issuing of the patent.

The title thus conferred on the donee was encumbered with conditions and liable to be defeated by the failure of the donee to perform; but it was nevertheless a present grant vesting the title, notwithstanding the estate was upon conditions subsequent and might be defeated by non-performance; and we are to consider whether, by the terms of the grant, failure to become naturalized was such breach of a condition subsequent as to defeat the grant. Up to the last moment of the life of the donee the delay was no breach of condition, there being nothing in the Act requiring the donee to be naturalized within a specified time. On the contrary, the effect of naturalization would have been the same had it been accomplished on the last day of his life as if done at a former period; and had he complied with all other requirements of the Act and lived until the present time without becoming naturalized, all the right and interest in the land that were his immediately after the Act took effect would still be his. Should an alien so circumstanced become naturalized hereafter, the disability in regard to receiving a patent would thereupon disappear, and he would then stand in respect to the title and in respect to receiving a patent in the same position as a native citizen. It is clear, therefore, that during the lifetime of Charles P. Matt his rights were not divested because of his failure to become

naturalized, and if the land has reverted to the Government, because of his failure, it reverted at his death. The donee in this case, although an alien, was within one of the classes of persons entitled, under the specifications of the Act, to take as a donee, and he was within the description of persons of whom it is enacted that if "either shall have died before patent issues, the survivor and children, or heirs, shall be entitled to the share or interest of the deceased." The land donated must be within that general provision, unless there is some special provision making the donee, who had before the passage of the Donation Act declared his intention to become a citizen, an exception to the general rule relating to the disposition of the property on the death of the donee.

There is, in the language first above quoted, a special provision in regard to aliens who made the declaration of intention *after* the passage of the Act, and it is a peculiar and noticeable feature of the provision that it omits to mention the survivor, and enacts that if one of that class "shall die before his naturalization shall be completed, the possessory rights acquired by him under the provisions of this Act shall descend to his heirs at law." No such special reference is made to the disposition of the property of those who had *previously* declared the intention. On the hearing it was argued that an inference arises from omitting to make special provision touching the latter class, that the share or interest granted them would not descend, but would terminate with the life of the donee. Such an inference might arise if no general rule had been made broad enough to include the latter class, but inasmuch as the scope of the general provision for disposing of property on the death of the donee does include the class of aliens not mentioned in this exception or special provision, the only presumption thus raised is that no special provision is intended in regard to that class, and the only logical deduction is that on the death of an alien of that class the disposition of the property is within the general rule. The circumstance that the land of the other class is made to descend in an exceptional manner leads to the same conclusion.

On the argument, reference was made to the circumstance, that at the time of the passage of the Act there was a class of settlers who were not in sympathy with our Government, and it was claimed that the proviso first above quoted was inserted in the Act for the purpose of discriminating against that class of settlers, and that the Act should be so construed as to give it that effect. It is difficult to perceive that the construction contended for would tend to favor such discrimination. If one of the objects sought to be accomplished by the Act was to discriminate against such British subjects as were unfriendly to our Government, that object would not be advanced by favoring the heirs of those who should thereafter declare the intention to become citizens, and entirely cutting off the heirs of those who had previously done so, especially as it is not to be supposed that many of those not in sympathy with our Government had made such declaration of intention previous to the passage of the Act. The object would have been better effected by dealing liberally with those who had already taken the incipient step, and by denying a donation to those who had not done so, or placing the grant to them under severe restrictions. Want of sympathy with the Government on the part of a portion of the alien settlers does not afford a reason in favor of the construction that would cut off the children or heirs of those who had declared their intentions before the passage of the Act.

The provision of the Donation Act that indicates an intention to discriminate against aliens of any class, is that part of the proviso above quoted which declares that an alien shall not be entitled to a patent until he produces proof of his naturalization, and the right of the plaintiff to the relief prayed for in this case depends upon the question whether the death of Charles P. Matt, while he labored under the disability as to receiving a patent, forfeited the right to the land.

There are several provisions in the Act itself that show that its framers did not conceive that issuing a patent to the donee was indispensable to the operation of the grant; as, for instance, the provision of the fourth section, by which

the rights of one class of aliens descend to the heirs at law;
that of the same section by which the share or interest de-
scends to the survivor and children or heirs, in case the
settler has "complied with the provisions of the Act so as
to be entitled to a grant," and dies before patent issues;
that of the eighth section, by which, on the death of a set-
tler before the expiration of the four years' continued pos-
session, "all the rights of the deceased under this Act shall
descend to the heirs at law of such settler, including the
widow, where one is left," and the similar provisions found
in ℨ 1 of the amendment of 1853. In case of aliens who
declared their intentions after the passage of the Act, the
property descends to the heirs at law, although the heirs
may be aliens, and possibly may not even declare their in-
tention to become citizens. The language of the fourth sec-
tion assumes that settlers who die before patent issues, may
and do become entitled to the grant, and it would seem ob-
vious from the tenor of the Act, if it were not already judi-
cially determined, that the donee takes an estate in the land
before the patent issues. The interest thus acquired is
something more than a bare possession: the donee has a
right which even the Government cannot annul or disre-
gard—it is a property in the land, held by him in his own
right, and it is not a mere life estate; the Act contemplates
that he may devise it. It is true, his interest at its incipi-
ency is an estate encumbered with conditions, but they are
conditions subsequent, and it is in his power to render the
estate absolute. If he complies on his part, it is not in the
power of the Government to divest it; he must, therefore,
be deemed the holder of the legal title, as well before as
after the patent issues. In the lifetime of Charles P. Matt,
and while his naturalization was delayed, his estate did not
remain in abeyance for the lack of a patent, and the Act by
its terms directed to whom the land should go in case of his
death. Withholding the patent from the heir does not
necessarily divest the rights of the heir nor the title which
the law has cast on the heir. There is nothing in the Act
to prevent the patent issuing to the heir if the heir is or
becomes a citizen; nor is it indicated in the Act that the

grant shall become inoperative the moment of the death of
the donee, in case a patent has not issued prior to that time.
The grant not being limited to an estate for the life of the
donee, the grant remained in operation, in the absence of a
patent, as well at the moment of the death of the donee as
during any other part of the time in which the patent was
delayed or retained because the grantee was not entitled to
receive it.

We find in §§ 4 and 8 of the original Act, §§ 1 and 8 of
the second Act, and § 5 of the third Act, such manifest in-
tention to deal liberally with the heirs and widows of those
who are prevented by death from complying with the con-
ditions which Congress deemed it necessary to impose, that
nothing short of a clear manifestation of such intention can
reasonably be construed to place a particular class of per-
sons in an attitude so opposite to that in which the framers
of the law have evidently sought to place those deemed
worthy to receive a donation.

The case before us presents this state of facts: A British
subject settled upon the land in controversy in 1844, and,
with his family, continued to reside upon it until his death,
in 1851, prior to which time he made the usual application
at the Land Department, he having in 1849 made declara-
tion of his intention to become a citizen.  At his death the
plaintiff, Theresa Blakesly, who was his only daughter, still
claimed the land in right of her father, and it was entered
upon by the said Taylor, a stranger to the title, under claim
that by the terms of the Donation Law the land which had
been thus held by the plaintiff's father for seven years had
reverted to the Government.

By the operation of the Donation Act, the plaintiff's
father acquired the land in fee, subject to the conditions
specified in the Act.  (*Summers* v. *Dickinson,* 9 Cal. 554;
*Kernan* v. *Griffith,* 27 Cal. 87.)

The only restriction contained in the Act bearing any re-
lation to the facts before us, is that expressed in the words,
"Provided that no alien shall be entitled to a patent to the
land granted by this Act until he shall produce" evidence
of his naturalization.  It has been universally held that a

statute which grants land by words of present grant passes the legal title to the grantee by the Act itself. (*Lee* v. *Summers*, 2 Ogn. 260; *Strother* v. *Lucas*, 12 Pet. 454; *Fletcher* v. *Peck*, 6 Cranch, 87.)

This land having been donated to Matt, and the title, on his death, having vested in the plaintiff, Theresa Blakesly, and her mother, whose interest she now has, the United States having no title could not lawfully grant it to another. (*Polk's Lessee* v. *Wendal*, 9 Cranch, 87; *Patterson* v. *Winn*, 11 Wheat. 380.)

There are sufficient facts alleged in the complaint to show that the plaintiff is entitled to relief. The title, having vested in the plaintiff's father at the time of the passage of the Donation Act, was not divested by failure to issue a patent to him, nor by his death while he labored under the disability affecting only his power to receive a patent and not his power to take the land, and on.his death the land did not revert to the Government. It being private property, the Government could not grant it, and the defendants, as grantees of Taylor, must be deemed to hold the patent in trust for the plaintiff. A decree should be entered in the Circuit Court in accordance with this opinion.