## WATER RIGHTS IN OHIO CANALS.

Common Pleas Court of Hocking County

JOHN W. MCBROOM v. GEORGE H. WATKINS ET AL.

Decided, April 1, 1911.

*Canals—Creation of Water Power Not Within the Purpose of Their Construction—Grantees of Water Rights Took Them Subject to Fluctuations of Tides and Changes of Time—Denial of Injunction Against Interference by the State Board of Public Works With a Dam—Discretion of Public Officials—Res Adjudicata—Public Exigencies—Section 435.*

1. By the act of February 4, 1825, whenever the state took possession, through its agents or officers, of any lands, water, streams or materials, necessary for the prosecution of improvements intended by this act, the mere act of taking possession vested in the state the fee simple to the water and streams, the same as in the lands through or over which they flowed.

2. Private individuals can not compel the state to respond in damages for the destruction of water power created by the construction of canals, nor can they maintain injunction proceedings to restrain the state from destroying the same by abandoning the canals.

3. The board of public works was without authority to enter into an agreement or contract to build and forever maintain a dam for the purpose of affording water power to a riparian mill owner, and such agreement or contract would confer no right upon such riparian owner and no obligation upon the state to maintain such dam; nor can the state be prevented from destroying such dam and thus destroying such water power.

4. A private individual, as such, can not maintain injunction proceedings against, or interfere with, an officer or officers of the state in the performance of his duty, unless it can be shown that such officer acted in bad faith or from corrupt and malicious motives.

5. Public officers as such are vested with certain discretionary powers, and in the absence of corruption, malicious intention or caprice, a court of equity will not interfere with such discretionary powers.

6. A present owner of property is bound by the decision of a court of competent jurisdiction in a prior case between his grantor and the lessee of the adverse party, where the subject-matter was the same and the same questions were at issue in such prior action.

*R. F. Price, C. W. McCleery, A. R. McBroom* and *H. M. Whit-craft,* for the plaintiff.

*Timothy S. Hogan,* Attorney-General, for defendants; *John A. Alburn, J. J. Chester* and *Frank Davis, Jr.,* of counsel.

PEOPLES, J.

This case is submitted to the court on the petition of the plaintiff, John W. McBroom, the separate answers of the defendants, Geo. H. Watkins, William Kirtley, B. W. Baldwin and James R. Marker, the replies of the plaintiff to each of the separate answers of the said Kirtley, Baldwin and Marker, and the evidence.

The petition alleges that the plaintiff is the owner in fee simple and in possession of 10.81 acres of land, more or less, situated in Hocking county, Ohio, and commonly known as the Hocking Falls Mill property; that said premises are on and include the Hocking river, at what is known as the Hocking Falls, near the village of Logan, Ohio, on which is a flour mill having, as appurtenant thereto, a perpetual easement in the use of the waters of said river, not required for canal purposes, for operating and driving the machinery of said mill; and that said easement comprehends the right to have the water of said river raised to and maintained at the level as now maintained by the dam, known as the State dam.

The petition further alleges that the premises, including the said water right, is of the value of about $15,000; that the plaintiff and his grantors have owned said premises from a date long prior to the location and construction of the canal system of Ohio; that prior to 1840, the state of Ohio adopted the slack water created by Worthington's mill dam, for a distance of about two miles, making the exit about 200 yards above said mill dam; that in the year 1841, the agents and officers of the state of Ohio built a dam a few feet below the old dam, which State dam still stands intact; that in 1843, in settling and adjusting claims for damages done to said mill and its appurtenances, the agents and officers of the state agreed with the heirs of Thomas Worthington, that the awards and assessments made by the state were made on the supposition that thereafter no more water should be taken

from the Hocking river at said falls than was actually necessary for canal purposes; that the Hocking canal has been wholly abandoned and unused for canal purposes for more than fifteen years, and that the defendants as agents and officers of the state of Ohio are threatening to, and are about to destroy said dam, and if not restrained will illegally and wrongfully destroy same, to plaintiff's great and irreparable injury.

Then follows a prayer for a perpetual injunction against the destruction of the said dam and water power and for all proper relief.

The defendants, William Kirtley and B. W. Baldwin, file separate answers, identical in substance and therefore considered together, admitting their official capacity as members of the board of public works of the state of Ohio, and in their first defense denying all other allegations of the petition; in a second defense they each allege a fee simple ownership in the state of Ohio of the dam or dams attempted to be described in the petition of the plaintiff and all rights and appurtenances attached thereto, and that the dam with the slack water created thereby constitutes approximately four miles of the Hocking canal, which Hocking canal the state owns in fee simple, and that such ownership of the state includes all water rights in and connected with such dam or dams, and that they, as such officers, had not done or attempted to do anything in relation to said dams except in pursuance of the duties enjoined upon them by the laws of Ohio, as members of the board of public works of the state, nor were they threatening or intending to do anything in relation to such dam or dams, except in the performance of their duties as provided by law.

In a third defense these defendants set up, by way of estoppel, that this matter has been adjudicated in a case, No. 1080, in the Circuit Court of Franklin County, Ohio, wherein Robert Wright, a former owner and predecessor in ownership of the plaintiff in this action, and from whom the plaintiff claims title to the said mill and the water right, was the plaintiff, and the Columbus, Hocking Valley & Athens Railway Company was defendant; that said action was prosecuted on error to the Supreme Court of the state, in case No. 5623, where the decree and

judgment of the circuit court was affirmed, and that in said case the same question, to-wit, the plaintiff's right to the water power in connection with said mill was directly in issue, and that the prayer of the petition was to restrain the destruction of the said water power.

The defendant, James R. Marker, answers admitting his official capacity as chief engineer of public works of the state of Ohio and denying all other allegations of the petition; and in a second defense set up ownership in fee simple in the state of Ohio in the dam or dams attempted to be described in the petition of the plaintiff and in the slack water created by said dam for about four miles of the Hocking canal, and that the state owns in fee simple the Hocking canal, including all water rights connected with such dam or dams, and alleges that he has never done or attempted to do anything in relation to said dam, except in strict pursuance of the resolution of the board of public works, and that he is not threatening to do nor intending to do anything in relation to such dam or dams except in a lawful manner in conformity with the resolution of said board.

To each of these answers the plaintiff replied denying all allegations of new matter alleged therein.

This is, therefore, a cause in which the plaintiff, John W. McBroom, seeks a perpetual injunction against the defendants, as agents of the state of Ohio, restraining them from destroying or injuring the dam or dams or either of them, or from in any other manner destroying or injuring the water power afforded his said mill by said dams, and for all relief to which he may be entitled.

The first question which the court must determine is the relation the plaintiff sustains to the property which he seeks to protect by this action.

By his petition he seeks, not to protect a public, but a private right. In order for him to succeed he must show by a preponderance of the evidence that he has a right in the use of the water, controlled by the dam or dams in controversy, paramount to the right of the state therein. He must show that he has an easement in the waters that flow past the Falls Mill that is appurtenant to the property described in the petition.

Were this an ordinary case, it would need no citing of authority to determine that the plaintiff is entitled to the relief prayed for. As between private riparian owners it will not be denied that each has an easement in the water of streams running between their lands, conditioned only that they use the same so as not to damage each other or the owners of the estates above and below them. As pertinently asked, in his brief, by one of the learned counsel for the plaintiff, did the state divest Worthington of his water power rights? He answers this question in the negative. But is that answer correct according to the conceded facts and the evidence in this case.

As appears from the evidence Thomas Worthington built a dam across the Hocking river at what is known as the Hocking Falls Mill and used the water of the Hocking river as power to run the machinery of said mill. This was about the year 1818 and long before the act of February 4, 1825 (23 O. L., 50), under which act the state appropriated to itself a fee simple title in and to all the lands and waters of the state, deemed necessary for the construction, operation and maintenance of the canal system, inaugurated by that act.

By Section 8 of that act, it was declared lawful for canal commissioners, provided for in the act "and each of them by themselves, and by any and every superintendent, agent, and engineer employed by them, to enter upon, and take possssion of, and use all and singular any lands, water, streams and materials necessary for the prosecution of the improvement intended by this act." In doing this it was declared that "no unnecessary damage" should be done and "in case any lands, water, streams or materials taken and appropriated for any purposes" should "not be given or granted to the state," the canal commissioners "on application being made to them, by the owner or owners of any such lands, water, streams or materials" were to appoint, in writing, appraisers whose duty by the act was to equitably estimate and appraise the loss and damage, if any, to the respective owners or parties interested in the premises.

This act also authorized the canal commissioners to pay the damages so assessed and appraised and declared that the "fee

simple of the premises so appropriated shall be vested in this state."

Acting under and by virtue of this act of February 4, 1825, the board of canal commissioners of Ohio, on February 8, 1844, as shown by the evidence, awarded and ordered paid out of the canal fund to individuals for injuries sustained in the location and construction of the Hocking canal the sum of $11,295. Six thousand dollars of this sum was paid to Thomas Worthington, and $1,700 to the heirs of Thomas Worthington.

It therefore follows that the state of Ohio has the fee simple title, not only to the lands occupied by the Hocking canal, but also a fee simple title in the water which flows through such lands.

It is conceded that the plaintiff, John W. McBroom, holds only such title and appurtenant rights to lands formerly owned by Thomas Worthington and through which the Hocking canal was constructed, as Mr. Worthington possessed. The successors in title from Worthington to and including the plaintiff, John W. McBroom, can claim no title and no right in those premises not vested in or incident to the estate of the original source of title, Thomas Worthington.

It is also conceded that the state did appropriate the water of the Hocking river for several miles above the Falls Mills, as a part of the Hocking canal. It took possession of the Hocking river from where the canal entered same, several miles above said mill, down to and including the dam or dams in controversy herein. It built a new dam, just below, and some two feet higher than the old dam.

As laid down by Judge Bradbury in the case of *Ohio, ex rel* v. *Railway Co.*, 53 O. S., 247, "no conveyances were required, nor was any legal or formal proceedings necessary" when the state acquired its canal lands. It simply occupied such as the canal commissioners desired. This occupancy by force of the statute, 23 O. L., 56, Section 8, vested the legal title in the state. No direct averment was necessary; from the fact alone that a tract was occupied by the state for the purposes connected with its canal system, it followed as a matter of law that the state owned it in fee simple."

Ordinarily there is no fee simple interest in the proprietor of land to the water which flows through his land. But not so with the water appropriated by the state for canal purposes under the act of February 4, 1825. By that act whenever the state took possession, through its agents or officers of "any lands, water, streams or materials, necessary for the prosecution of the improvements intended by" that act, the mere act of taking possession vested in the state the fee simple in the water and streams, the same as in the lands through or over which they flowed. This construction is uniform in all the Supreme Court decisions of Ohio wherein the question of title to the canal property has been considered.

It is claimed by counsel for the plaintiff that the state, through its officers and agents at the time of the finding and awarding of damages to Worthington, used such language as binds the state to forever maintain the dam at Worthington's mill.

But the Supreme Court of Ohio, in 42 O. S., 615, in discussing the act of March, 1840 (38 O. L., 87), which act granted the canal commissioners power to lease waters of the canal for hydraulic purposes and collect rental therefor, said:

"It is quite clear they (conditions and reservations in leases) are not broad enough to embrace conditions to be imposed upon the state after the right to use the water has expired, or after the state has abandoned the canal as a public highway. By such resumption or abandonment, which are identical in their results, so far as lessees are concerned, the state is not liable to respond in damages to the lessee. If otherwise, the state would be compelled to maintain her canals at any sacrifice for the exclusive benefit of the lessees of surplus water, or become the purchaser of the property of the lessee, thus making the incidental, paramount to the public use." Citing *Hubbard* v. *City of Toledo,* 21 O. S., 379, where, on page 398, Judge West, delivering the opinion of the court, said:

"Since, then, the consequences of resumption and abandonment are identical, it is incredible that a liability should arise, by implication from the latter, which by express negation can not from the former. If it were otherwise, the state would be compelled to maintain the canals, at any sacrifice, for the exclusive benefit of the lessees of the surplus water. This can not be. The creation of water power did not enter into the purpose of their

(canals) construction.   It was adventitious, identical and there-
fore necessarily precarious;  and those obtaining grants thereof
must be supposed to have taken them, subject to the fluctuations
of tides and the changes of time.''

If then, the state can not be compelled to respond in damages
for destruction of the water power of private individuals, can it
be said that such individuals can maintain injunction proceed-
ings to restrain the state from abandoning the canals?

Nothing that the board of public works could say or do could
possibly enlarge the rights of Thomas Worthington or any one
holding under or through him.   Under the act creating and pre-
scribing the powers of the board of public works or canal com-
missioners it was provided that they should have charge of the
public works of the state, and shall have power to perfect, render
useful, maintain, keep in repair and protect the same, and to
that end shall have ''power to remove obstructions therein and
thereto.''

In commenting on this language the Ohio Supreme Court in
*State, ex rel,* v. *Railway Co.,* 37 O. S., 174, said:

''The board of public works possess no power to grant rights,
easements or privileges for private advantage, unless expressly
authorized by law.''

The court has been referred to no authority, and has discovered
none, that justified or legalized the language used by the canal
commissioners, in their findings in the case of Worthington
wherein they say:

''The state is about erecting a permanent dam, two feet higher
than the old dam, which must be kept up forever hereafter by
the state for canal purposes.''

This was clearly unauthorized by the act creating the board
and prescribing its powers and does not affect the rights of
either the state or of the plaintiff in this case.

Such is the law as applied to the conceded facts of this case,
and the power of the members of the board of public works and
the engineer representing the state as defendants herein can not
be interfered with by this court so long as it is not proven that

said officials have acted in bad faith or from corrupt and malicious motives. *Cooper* v. *Williams*, 4 O., 286.

There is no proof in this case that either of the defendant members of the board of public works acted maliciously or corruptly or in bad faith in their proceedings relative to the destruction of said dam. There was some evidence given by the plaintiff that the defendant, James R. Marker, chief engineer of the board, endeavored to elude him for the purpose of blowing up the dam in his (plaintiff's) absence. But even this fell short of proof of bad faith or of a malicious or corrupt motive on the part of the defendant Marker.

But if the court. is in error as to its interpretation of the law as applied to the facts proven and conceded in this. case, as hereinbefore found, yet it is of the opinion that the rights of the plaintiff herein are concluded by the decisions of *Vought* v. *Railroad Co.*, 58 O. S., 123.

The contention of the defendants is, that the decision of the court relative to the case of *Wright* v. *Railway Co.*, one of the cases disposed of with that of *Vought* v. *Railway Co.*, Wright being then the owner of the property and appurtenances now owned by the plaintiff herein, and the defendant, the Columbus, Hocking Valley & Athens Railway Co., being the lessee of the state of the Hocking canal, is decisive of this case because the precise question now raised was then adjudicated, and therefore the plaintiff is estopped from maintaining this action.

In that case the court said on page 159 that:

"Wright insists that the abandonment of the canal will impair the obligation of a contract made between the state and his predecessor in title, Thomas Worthington, to whose rights he succeeded; and which was made at the time the canal was constructed. Worthington then owned a grist mill located on the Hocking river, which was supplied with water from the river by a dam constructed on it. In consideration of his granting the state the right to construct the canal through the river and his lands and to appropriate the water to the use of the canal, the state agreed to enlarge and forever maintain the dam across the river above the mill, so as to afford an ample supply of water both for the canal and the mill. He does not and can not claim any title in the canal or its lands."

Is not this an exact statement of the claims made by the plaintiff in this case?

On page 161 of the decision last referred to, the court says:

"It is certainly settled by the decisions just cited (53 O. S., 189; *Id.*, 521, and 34 O. S., 541), that a contract made by the state through its board of public works with an individual for the use of the water of any of its canals for a period of years, terminates with the use of the canal, and that it is under no obligation to keep up the canal for such purpose after the canal has become useless for the purpose of navigation and has been abandoned. The agents of the state have no power to make a contract in the name of the state or to bind it thereby."

As to what rights the plaintiff may have as to damages against the state in case the dam is removed, or whether he has any right to damage therefor, the court is not called upon to decide.

The question here presented is as to the right of the plaintiff to maintain an action for an injunction restraining the state, through its agents and officers, from the removal of the dam which it constructed.

Being bound, as the court finds that it is, by the law and the decisions of the highest court of the state, as applied to the evidence in this case, to find the issues in favor of the defendants, it is probably unnecessary to notice the contention of the defendants, based on the alleged resolution of necessity passed by the board of public works on January 11, 1911.

The gist of that resolution is that the "interest of the state requires the alteration and amendment of the canal near Logan, Ohio, by the removal therefrom of the state dams," and instructs the chief engineer "to immediately remove such dams, and that the removal of such dams shall be deemed a public exigency under Section 435 *et seq.* of the General Code."

Section 435 of the General Code is in these words:

"A public exigency shall be deemed to exist if an injury or obstruction occurs in any of the public works which materially impairs their immediate use, or there is immediate danger of such occurrence, or such injury, obstruction or danger occurs during the process of construction of such public works."

· That a court can not and will not interfere to control the discretion of public officers, in the absence of evidence of bad faith or corrupt and malicious motives is, as hereinbefore stated, too well settled in Ohio to be controverted.

If, however, under the law of Ohio, the evidence in this case did not show that the plaintiff herein has no interest in the subject-matter of the action that entitled him to the relief prayed for this court would incline to hold that the officers and agents of the state, the board of public works, exceeded its authority when it passed the resolution of January 11, 1911.

The law itself, Section 435 of the General Code, declares what shall be deemed a public exigency. It does not leave it to the board of public works to declare it. The law says a public exigency shall be deemed to exist, first, "if an injury or obstruction occurs in any of the public works which materially impairs their immediate use or there is immediate danger of such occurrence."

Now, the board of public works had power to declare that an "injury or obstruction" had occurred which in its judgment materially impaired the immediate use of the Hocking canal "or that there was immediate danger of such occurrence." But this the board did not do, but satisfied itself with declaring that "the removal of such dams shall be deemed a public exigency." This the court believes was not a compliance with the statute but instead was in violation of its express provisions. The statute declares what shall be deemed a public exigency, and all the board was authorized to do in this instance was to declare that the public exigency defined by the statute did exist, and designating what one or more of the exigencies provided for in the statute did exist.

This resolution furnishes the only evidence, in this case, that tends to show bad faith on the part of the board of public works, and in view of the fact that the prayer of the plaintiff must be refused, on the grounds hereinbefore indicated, the court does not feel called upon to express an opinion on this point.

Decree accordingly.