## WILLIAM ROBINSON *v.* W. G. FORREST.

29   317
81   594
29   317
88   593
29   317
116   602
29   317
121   336
29   317
124   178
29   317
f134   46

PRE-EMPTIONER MAY ATTACK STATE PATENT.—A person who had settled upon and claimed as a pre-emptioner unsurveyed public land of the United States, before a sale of the same as swamp and overflowed land, and the issuance of a patent therefor by the State, is in such privity with the title of the United States as enables him to attack the patent by showing that the land is not swamp and overflowed.

EVIDENCE THAT LAND IS SWAMP AND OVERFLOWED.—A patent of the State, for land sold as swamp and overflowed, before the same has been listed to the State by the United States as swamp and overflowed land, is not conclusive evidence of the character of the same, but parol evidence may be introduced to show whether it is dry, or swamp and overflowed.

LEGAL SUBDIVISIONS OF PUBLIC LAND.—The phrase "legal subdivisions," as used in the Act of Congress, passed September 28th, 1850, relating to swamp and overflowed lands, refers to the smallest subdivision under the Congressional system of surveys.

STATE OWNERSHIP OF SWAMP LANDS.—The doctrine that the State is the owner of all swamp and overflowed lands in its limits, as laid down in *Summers* v. *Dickinson*, 9 Cal. 554, and *Kernan* v. *Griffith*, 27 Cal. 87, modified.

PLAT OF UNITED STATES SURVEY AS EVIDENCE. — In the trial of an issue between one claiming under the State, and a pre-emption claimant, as to whether a particular tract of land is swamp and overflowed, the approved plat of the survey by the United States is admissible in evidence to show the lines of the legal subdivisions, but not to prove that the lands are swamp and overflowed.

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

This action was commenced July 30th, 1863.

The other facts are stated in the opinion of the Court.

*P. L. Edwards,* for Appellant, contended that a patent could not be impeached by parol evidence in ejectment, and cited 1 Scam. 156 ; *The People* v. *Livingston,* 8 Barb. 253 ; *Curl* v. *Barrell,* 2 Smeede, 68 ; *Parker* v. *Claiborne,* 2 Swan, 595, and *Sargent* v. *Doe,* 34 Miss. 118.

He also insisted that the respondent had no title upon which he could defend, and cited *Richardson* v. *Robinson,* 9 Missouri, 801 ; *Terry* v. *Megerle,* 24 Cal. 610 ; *Sarpy* v. *Pepin,* 7 Missouri, 503, and *Summers* v. *Dickinson,* 9 Cal. 554. He also insisted that the plat of survey was admissible in evidence to show that the United States had recognized the land as swamp and overflowed.

*Budd & Carr,* for Respondent, argued that defendant had a right to show that the patent conveyed to the plaintiff no title from the State, and cited *Patterson* v. *Winn,* 11 Wheat. 380 ; *Winter* v. *Crommelin,* 18 How. 87, and also insisted that a pre-emptioner on unsurveyed land connected himself with the title of the United States, and cited *Kile* v. *Tubbs,* 23 Cal. 432 ; Vol. 12 Laws of U. S. p. 410, Sec. 7 ; Id. Vol. 10, pages 305, 309, 310, Secs. 10 and 12 ; *McApee* v. *Keim,* 7 Smeede and Marshall, 780 ; and *Little* v. *State of Arkansas,* 9 How. 333.

By the Court, RHODES, J.

This is one of a very large class of cases, presenting questions of conflict between titles derived from the State, under a sale of land as swamp and overflowed land, and titles or claims derived directly from the United States which, in consequence of the great delay that has occurred in definitely ascertaining the lands that inured to the State, under the Swamp Land Act of Congress of the 28th of September, 1850, promises to become still more numerous. The action is ejectment, and was brought in December, 1863. The plaintiff claims under a patent, issued in June, 1862, as of swamp and overflowed lands. The defendant claims the right of pre-emption, and alleges a settlement upon the land for that purpose in 1858. The plat of the survey of the township, including the land in controversy, does not appear to have been approved by the United States Surveyor-General until 1864. The verdict was for the plaintiff, and a new trial having been granted, the plaintiff appeals from the order.

The new trial was granted on the ground of errors in law occurring at the trial, and excepted to by the defendant. After the plaintiff had introduced in evidence, against the objection of the defendant, the patent from the State, and the approved plat of the survey, the defendant offered to prove by parol evidence that the land was not swamp and overflowed land; also, that at the time of issuing the patent the defendant occupied and still occupies the land in controversy, with his family; that he had gone on the land in good faith to pre-empt the same under the pre-emption laws of the United States; that he had fully complied with the requirements of such laws up to the present time; and that he was competent and qualified in every respect to pre-empt the land as public land of the United States. The plaintiff objected to the testimony on the ground that the patent and plat were conclusive evidence of the character of the land as against the defendant.

Neither party questions the authority of the case of *Kernan* v. *Griffith*, 27 Cal. 87, in which it is held that the question

whether the title to any given tract of land inured to the State, by virtue of the Act of Congress of the 28th of September, 1850, was to be answered by ascertaining as a matter of fact whether, at the date of the passage of the Act, the land was "swamp and overflowed land" within the meaning of the Act, and that if it was proven to be such, then the title vested in the State. The plaintiff, while assenting to this doctrine, says that the patent from the State is conclusive against the defendant, because he has no title upon which he can depend and because he does not bring himself in privity with a common or paramount source of title, and because he asserts what the plaintiff denominates "a mere hypothetical equity, which he has neither averred nor proved."

*What title from United States required to enable one to contest State patent.*

There is no rule requiring that the defendant shall have a perfect legal title derived from the United States before he can question the validity of the title claimed under the State. It is simply necessary that there shall be a privity of title between him and the United States—that is, that he shall possess some right, title, interest or claim in or to the lands that is permitted by the laws of the United States, to be acquired before the final transmission of title, and which is recognized by those laws, as a valid subsisting right, though further acts may be necessary to be performed by both parties before the title finally passes from the United States to the claimant. A preemption claim will answer this description. In *Lyttle* v. *The State of Arkansas*, 9 How. 333, Mr. Justice McLean, in delivering the opinion of the Court, made use of this language, which has been so often quoted in discussions respecting preemption claims: "The claim of a pre-emption is not that shadowy right which by some it is considered to be. Until sanctioned by law it has no existence as a substantive right. But when covered by the law it becomes a legal right, subject to be defeated only by failure to perform the conditions annexed to it." (See also *Bernard's Heirs* v. *Ashley's Heirs*, 18 How.

43; *Garland* v. *Wynn*, 20 How. 6; *Terry* v. *Megerle*, 24 Cal. 610; *Kile* v. *Tubbs*, 23 Cal. 432.)

The seventh section of the Act of Congress of May 30th, 1862, provides " that in regard to settlements, which, by existing laws, are authorized in certain States and Territories upon unsurveyed lands, which privilege is hereby extended to California," the pre-emption claimant shall be required to file his declaratory statement, etc.   Among other Acts authorizing a settlement upon, and the acquisition of the right of pre-emption to, unsurveyed land, is the Act of July 17th, 1854.   (10 U. S. Statutes at large, p. 305; the Act of July 22d, 1854, Id. p. 310; and the Act of August 4th, Id. p. 575.)

The evidence offered by the defendant was a portion at least of that which was necessary, in order to bring him within the provisions of the Act of Congress of 1862, and show that he had acquired such a right of pre-emption to the lands in controversy, as could be held in the unsurveyed public lands.

Another ground of the motion for a new trial, was the alleged error in admitting in evidence the plat of the survey of the township, on which the lands in controversy were noted as swamp lands.   It was offered as evidence to prove that the lands in controversy were swamp and overflowed lands.   The opinion of the Court in granting a new trial not being before us, and there being nothing in the record indicating the grounds upon which the order was made, it is proper that this point should also be passed upon.

In offering in evidence the plat, reliance doubtless was placed mainly upon the surveyor's descriptive notes found upon the plat, indicating that the lands in controversy were swamp lands, but we will not undertake to say that such was the only manner that he intended to make the plat available as evidence.

*Map of survey of swamp land as evidence.*

The descriptive notes on the plat are not conclusive evidence of the character of the land, for when the bounds of a

tract are given, the question whether the tract is or is not included within the lands granted as swamp and overflowed land, is a question of fact; and where the question arises, prior to ,the time when it is finally ascertained on behalf of the General Government and the State, what lands passed to the State under the grant, it must be determined as the same question would be, when involved in a controversy between private persons, respecting lands bearing no relation to the Act of Congress. (*Kernan* v. *Griffith, supra.*) Neither the laws of Congress, nor the statutes of this State, nor the instructions issued from the General Land Office, have constituted the plat as evidence between the General Government and the State, that the lands are or are not such lands as were granted by the Act of Congress to the State. It was designed for a very different purpose. It might properly be adopted, as it has been, by the General Government and several of the States, as evidence of the character of the lands, but until it is so adopted, it is not competent evidence to prove the fact in question.

The plaintiff, however, in offering the plat did not limit the offer to the descriptive notes found thereon, and it becomes material to inquire whether it was not competent evidence, in connection with other evidence, to show that the title passed to the State, under the Act, though not sufficient by itself to show the character of the land.

Cases are liable to arise, as may readily be conceived, in which the survey would not only be admissible in evidence, but absolutely essential to a recovery upon the patent issued by the State, for swamp and overflowed land. The principle is advanced in *Summers* v. *Dickinson*, 9 Cal. 554, and affirmed in *Owens* v. *Jackson*, Id. 322, and *Kernan* v. *Griffith, supra*, that upon the passage of the Act of Congress of September 28th, 1850, the State became the absolute owner of all the swamp and overflowed lands within her limits that had not been disposed of, the Act itself operating as a full and perfect conveyance *in presenti.* The truth of the proposition, as a general proposition, and when applied to the larger portion of the

swamp and overflowed lands, is not questioned, but some modification of the general rule will be required when its application is sought in respect to certain portions of those lands, situated adjacent to the line dividing such lands from the dry lands. Those cases, perhaps, did not require any particular notice to be taken of the third section of the Act of Congress, which is as follows: "That in making out a list and plats, of the land aforesaid, all legal subdivisions, the greater part of which is 'wet and unfit for cultivation,' shall be included in the said list and plats; but where the greater part of any subdivision is not of that character, the whole of it shall be excluded therefrom." This section must be read in connection with the first section, in order to ascertain the lands intended to be granted. A patent is required by the second section to be issued by the General Government to the State, at the request of the Governor, for all the lands granted; and for that purpose the Secretary of the Interior is required to make out a list of the lands described in the first section. No provision is made in the Act for the issuing of a patent for any lands not included in the list. The lands granted must be identical with those required to be included in the list, and for which the patent is to be issued. The third section amounts in some respects to a limitation upon the general terms of the first section, and constitutes a more accurate designation of the lands granted. The legal subdivisions mentioned are the subdivisions made under the authority of Congress alone. The smallest subdivisions, under the Congressional system, are quarter-quarter sections, or forty acre lots, unless a fractional quarter section is subdivided, when the subdivisions may be smaller than forty acre lots, and different in their general form. It is to these smallest subdivisions that reference is made in section three, and if the greater part of any such subdivision is wet and unfit for cultivation, it vests in the State. This is the obvious meaning of the term "legal subdivisions," as employed in that section, and this construction is given to it by the Department of the Interior, as appears by the rules and instructions issued soon after the

passage of the Act, as well as at a late date. (See Lester's Land Laws, 543, 551.) Where the whole of a township, section, or subdivision of a section is of the character embraced in the grant, the title of course passed to the State. (Id. 544.)

The first section, when read in connection with the third, which serves to limit and define the more general terms of the first, expresses a grant to the State of the legal subdivisions of the public land, the greater part or all of which are wet and unfit for cultivation, and is not a grant of the swamp and overflowed land, without regard to legal subdivisions. In case the subdivision is intersected by the boundary of the swamp and overflowed land, the question whether such subdivision vested in the State, is solved by ascertaining, as a matter of fact, whether the greater part of such subdivision is swamp and overflowed land, or dry land. It thus appears that under the operation of the Act, dry land may be included, and swamp and overflowed may be excluded from the grant, and that where the land lies adjacent to the margin of swamp land, the title to any given parcel of swamp land does not vest in the State, unless it appears that it forms the larger part of a legal subdivision. It is in respect to legal subdivisions situated at the margin of the swamp and overflowed land that the general proposition announced in the cases above cited require this modification: that if the swamp and overflowed land—or, as it is expressed in section three, the land " wet and unfit for cultivation "—falling within any legal subdivision does not constitute the greater part of such subdivision, such portion of swamp and overflowed land is not included within the terms of the grant.

Where the lands are so situated, that they do not fall within a legal subdivision—according to the signification of that term as employed in section three—that might be intersected by the boundary line of the swamp and overflowed land, no practical question can be made as to their being included in the grant, or as to the Act operating as to them, as a grant *in presenti;* and a survey made under the authority of Congress would not seem to aid or in any manner ascertain the title of

the State; but when a parcel of swamp and overflowed lands does fall within a subdivision so situated, a survey may not only be proper but indispensable, as the only means of ascertaining whether the title to the given parcel, vested in the State by virtue of the Act of Congress.

Neither a private survey nor one made under the authority of the State will answer this purpose, but it must be made under the authority of the United States. Even after a principal meridian and a base line have been established, and the exterior lines of the townships have been surveyed, neither the sections nor their subdivisions can be said to have any existence, until the township is subdivided into sections and quarter sections by an approved survey. The lines are not ascertained by the survey, but they are created, and although a surveyor may, in advance of the making of the subdivision of the township, by the Deputy of the United States Surveyor-General, run lines with the greatest practicable exactness from the corners established on the exterior lines of the township, to ascertain the bounds of any given quarter-quarter section, still when the survey comes to be made under the direction of the Surveyor-General, the difference between the two surveys may be such that the forty acre lot, which, under the private and theoretically the more accurate survey, appeared to fall within the lands listed to the State, will be excluded from the list, or *vice versa.*

The plat of the survey of the township was admissible in evidence, for the purpose of showing the lines of the subdivisions including the lands in controversy, but not for the purpose of proving by the surveyor's descriptive notes found upon the plat, that those subdivisions are swamp and overflowed lands.

Order granting a new trial affirmed.