NOTE.—This opinion in *Miller* v. *Tobin* was inadvertently omitted from volume 15 Oregon, the opinion on rehearing only being reported on page 595 of that volume.

[Filed November 7, 1887.]

## J. F. MILLER, APPELLANT, *v.* J. TOBIN, RESPONDENT.

PUBLIC LANDS—DONATION OF SWAMP LANDS—CONFLICTING TITLES—REMEDY AT LAW.—The Act of Congress of March 12, 1860, "to extend the provisions of an act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits, to Oregon and Minnesota," was a grant *in præsenti* to the latter States of land that was in fact swamp land at the date of the act; and a party claiming such land under a patent from the State of Oregon has a complete remedy at law against one claiming under a patent from the government; and a suit at equity by the former against the latter to compel the conveyance of the latter's title to the former will, for that reason, be denied.

APPEAL from the Circuit Court of Klamath County.

*P. P. Prim, H. K. Hanna,* and *N. B. Knight,* for Plaintiff.

*B. F. Dowell,* for Defendant.

LORD, C. J.—This is a suit to have the defendant decreed to convey to the plaintiff the legal title to certain land described in

the complaint, for which he holds a pre-emption patent from the United States, dated October 6, 1875. The plaintiff claims title to the same land under a deed executed by the State of Oregon to him, as swamp land, in pursuance of an act of the legislature, commonly known as the "State Swamp Land Act," of October 26, 1870, upon his compliance, as alleged, with the provisions of that act. The complaint shows that the defendant is in possession of the land in question; that it has not been listed or patented to the State of Oregon by the secretary of the interior, whose duty it is so to do, primarily, under the Act of Congress of March 12, 1860, entitled, "An act to extend the provisions of an act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits to Oregon and Minnesota, and for other purposes;" but that the State selected this land, together with other lands, as swamp lands, January 10, 1872; filed a notice of the State's claim, and a list of the selections, including the land in controversy, in the office of the surveyor-general for Oregon, December 1, 1872, and in the United States land office in Klamath County; and all other acts and things as required by the State swamp land act as aforesaid. The plaintiff's deed from the State is dated July 5, 1882. It is also alleged that the said land is swamp; that the defendant well knew it to be such when he settled upon it as land subject to pre-emption, but that he falsely and fraudulently stated that said land was subject to private entry, etc., and procured the affidavits of James Hudson and Dennis Crowley, "that the defendant had resided upon, cultivated, and improved the said described land as by the pre-emption laws of the United States required," which affidavits were false and fraudulent, and well known so to be by the defendant at the time, etc.; "that the register of the United States land office at Linkville, Oregon, relying upon the defendant's statement that said land was subject to private entry, and relying upon the said proof of settlement and improvement of said land, and believing the same to be true, permitted the defendant to enter upon said land, and thereafter to receive the patent therefor, to the great injury of the plaintiff;" "that the plaintiff is the owner of the equitable title to said land, and

that the defendant ought, in equity, to convey to him the legal title to the same," etc.

As the first and main objection raised and relied upon is, in our judgment, decisive of this case, it is unnecessary to make further reference to the facts in the pleadings. That objection is that the facts stated do not present a case requiring equitable relief, or that the remedy of the plaintiff, if any, is complete at law. This will require some reference to the swamp land act of Congress, which we shall assume to be known without incorporating its provisions here. The swamp land act is a grant *in præsenti*, by which the title to such lands passed at once to the State, upon the adoption of the Act of Congress of March 12, 1860, extending the provisions of that act to Oregon. It has been so held by the Supreme Court of the United States (*Railroad* v. *Smith*, 9 Wall. 95; *French* v. *Fyan*, 93 U. S. 169; *Martin* v. *Marks*, 97 U. S. 345), and of this State (*Gaston* v. *Stott*, 5 Or. 488), and of the several States of the Union. (*Owens* v. *Jackson*, 9 Cal. 322; *Kernan* v. *Griffith*, 27 Cal. 87; *Whiteside Co.* v. *Burchell*, 31 Ill. 68; *Keller* v. *Brickey*, 78 Ill. 133; *Fore* v. *Williams*, 35 Miss. 533; *Fletcher* v. *Pool*, 20 Ark. 100; *Hendry* v. *Willis*, 33 Ark. 833; *Allison* v. *Halfacie*, 11 Iowa, 450; *State* v. *Bank*, 106 Ind. 436.) This view of the character of the grant has recently been sustained in *Wright* v. *Roseberry*, 121 U. S. 488; 7 Sup. Ct. Rep. 985, by Mr. Justice Field, giving the opinion of the court, in which he shows, after an able and exhaustive examination, that the construction of the swamp land act as a grant *in præsenti* has been maintained by the law officers of the government, by the land department, and by the repeated adjudications of the Supreme Court.

It must be taken, then, as settled law, that the Swamp Land Act of Congress of March 12, 1860, is a grant *in præsenti* to the State of Oregon of the lands situated within its limits, of the land described, and that the legal title to such lands is in the State, or its grantees, to whom it has lawfully conveyed them. Nor is this point contested by counsel for the plaintiff. They admit that the swamp land act was a present grant, which passed

immediately to the State the title to all the swamp lands within
its borders; but they claim, under the second section of that act,
the identification of such lands as were swamp was confided to
the secretary of the interior; and that until he shall make such
identification, by the issuance of a patent, the State or its
grantees is powerless, in a court of law, to assert title to any of
such lands against any person holding a patent to the same from
the government of the United States, for the reason that such
patent is conclusive of the legal title, and cannot be impeached
or avoided by parol testimony in a court of law.

Now, the theory on which the suit is brought is that the legal
title to the land in dispute, and alleged to be swamp, is in the
defendant Tobin; it asks that he be declared a trustee of the
legal title for the plaintiff, and that he be decreed to convey
the same to him. This is inconsistent with the view that the
swamp land act was a present grant of such lands to the State.
Nothing can be plainer, if the land be swamp, as alleged and
claimed, than that the title to it, under the act of Congress, is in
the State, or the plaintiff as its grantee, and out of the United
States, and that the patent to the defendant Tobin is a nullity,
and conveyed nothing. Unless the United States has title to
the thing granted, its patents can convey no title. Mr. Justice
Field said: "It is common knowledge that patents of the
United States for lands which they had *previously granted*,
reserved for sale or appropriated, are void." (*Wright* v. *Rose-
berry, supra.*) It will not do to say, to avoid the effect of the
contradiction involved, that the title of the State is incapable of
proof until the quality of the land to which it attaches is identi-
fied and patented by the secretary; for then a court of equity
would be as powerless to furnish relief as a court of law.
Besides, that would imply that the secretary could defeat the
grant by his failure or negligence to identify and patent the
lands granted; and that the State was powerless, either through
its legislature or courts, to prevent its rights from being
defeated. Nor will it do to say that the secretary may issue a
patent for land as a pre-emption claim which had years before
been granted to the State as swamp; that such patent is not

open to collateral attack in an action of ejectment; or that it is conclusive evidence of title in the holder of such patent, as against the State or its grantees, which can only be impeached by a proceeding in equity. Such a patent is absolutely void, and may be collaterally impeached in any action. The conclusive presumptions which attend patents of the United States as conveyances of title is only indulged when the United States has title to the subject-matter conveyed, and its officers authority to execute or issue patents for such land. "If the lands had been previously disposed of," said Mr. Justice Field, "or if Congress had made no provision for their sale, or had reserved them, the department would have no jurisdiction to transfer them, and its attempted conveyance of them would be inoperative and void, no matter with what seeming regularity the forms of law may have been observed. The action of the department, in that event, would be like the action of any other special tribunal not having jurisdiction of a case which it had assumed to decide. Matters of this kind, disclosing a want of jurisdiction, may be considered by a court of law. In such case the objection to the patent reaches beyond the action of the special tribunal, and goes to the existence of a subject upon which it was competent to act. . . . . A patent may be collaterally impeached in any action, and its operation as a conveyance defeated, by showing that the department has no jurisdiction to dispose of the lands; that is, that the law does not provide for selling them, or that they had been reserved for sale, or dedicated to special purposes, or had been previously transferred to others. In establishing any of these particulars, the judgment of the department upon matters properly before it is not assailed, but its authority to act at all is denied, and shown to never have existed." (*Smelting* v. *Kemp*, 104 U. S. 641–646.) When the selections are made, and approved by the secretary, or the patent issued, all the authorities agree that it relates to the date of the grant, and in such case, the patent is evidence of the identification of the land as swamp, and *confirmatory* of the title granted by the act. Its effect is, as Mr. Justice Field said, to "establish definitely the extent and boundaries of the swamp and overflowed lands in any

township, and thus render it *unnecessary* to resort to oral evidence on that subject. . . . . The determination of the secretary upon these matters, as shown by the patent, would be conclusive as against any collateral attacks; he being the officer to whose supervision and control the matter is especially confided." (*Wright* v. *Roseberry*, 121 U. S. 500; 7 Sup. Ct. Rep. 985.) As a consequence, then, it results that it is only when the action of the land department is within the scope of its authority, as in the instance just cited, or in the issuance of a patent for the sale of any of the public lands subject to sale by pre-emption or otherwise, that such a patent is conclusive of the legal title. But this doctrine of the conclusive presumption which attends the patent has no application when the action of the land department is without the scope of its authority or jurisdiction to act, as in the issuance of a patent for lands not subject to sale, reserved, or which have been previously granted away. In such cases, the action of the land department would be like that of any other special tribunal which assumed to act without jurisdiction; the patent, as an attempted conveyance of title, would be inoperative and void, and open to collateral assault in any action.

In this connection, it may perhaps be important to bear in mind the different functions which a patent may perform. Under the swamp land act, the patent is only confirmatory of the title already granted to the State, and, when issued, becomes record evidence of the title, although adding nothing to the title itself. In many other cases, it is a conveyance of title of whatever interest the government has to convey. This distinction is thus stated in *Langdeau* v. *Hanes*, 21 Wall. 521, in which the court say: "In the legislation of Congress a patent has a double operation. It is a conveyance by the government, when the government has any interest to convey; but where it is issued upon the confirmation of a claim of a previously existing title, it is documentary, having the dignity of a record of the existence of that title, or of such equities respecting the claim as to justify its recognition and confirmation." But in either case, whether the patent be a conveyance of title of public land sub-

XVI. OR.—35.

ject to sale, or confirmatory of title already passed by act of
Congress granting it, the patent derives its conclusive force and
effect at law from the fact that the land department acted within
the scope of its authority, and had jurisdiction under the law to
do what was done.

With this explanation we are now prepared to examine the
authorities cited by counsel to sustain the view that the remedy
is in equity and not at law.

The case of *Johnson* v. *Towsley*, 13 Wall. 72, so far as it has
any bearing on the matter here involved, only decides that the
action of the land office in issuing a patent for any of the public
land subject to sale by pre-emption is conclusive of the legal title
when its action is within the scope of its authority; that is, when
the land office has jurisdiction under the law to convey the land,
and the power of equity to interfere when fraud or mistake
intervene.

In *Railroad Co.* v. *Smith*, 9 Wall. 95, the secretary of the
interior had not furnished the State of Missouri with any list of
its swamp lands, nor had the State received any patent for the
same. The question presented was whether the grant by the
Act of Congress of June 10, 1852, to Missouri, of lands to aid in
the construction of certain railroads, covered the swamp and
overflowed lands granted to the State by the Act of September
28, 1850. The defendant Smith, the State's grantee, had been
permitted, on the trial below, to introduce evidence, against
objection, tending to prove that the lands in suit were wet, and
unfit for cultivation, at the date of the Swamp Land Act of 1850.
After some reference to the nature of the grant, the duty of the
secretary of the interior to identify and ascertain the character
of the land, and furnish the State with the evidence of it, the
court said: "Must the State lose the land, though clearly
swamp land, because the officer had neglected to do this? The
right of the State did not depend on his action, but on the act
of Congress; and, though the State might be embarrassed in the
assertion of this right by the delay or failure of the secretary to
ascertain and make out lists of these lands, the right of the State
could not be defeated by that delay." And the court further

said that, as the secretary had no satisfactory evidence under his
control to make out these lists, he must, if he attempted it, rely
on witnesses whose personal knowledge enabled them to report
as to the character of the tracts claimed to be swamp and over-
flowed. "Why," asks the court, "should not the same kind of
testimony, subject to cross-examination, be competent, when the
issue is made in a court of justice to show that they are swamp
and overflowed? The matter to be shown is one of observation
and examination; and whether arising before the secretary,
whose duty it was primarily to decide it, or before the court,
whose duty it became, because the secretary had failed to do it,
this was clearly the best evidence to be had, and was sufficient
for the purpose." Note how these facts parallel with the facts
stated by the complaint. Although the swamp lands were
granted to the State more than a quarter of a century ago, the
secretary, upon whom the law primarily devolved the duty, has
failed or neglected to identify or ascertain the character of the
lands, and furnish the State with the evidence of it. The State,
in 1870, passed an act providing for their identification and
sale, etc., and the plaintiff holds the State's deed to the lands in
question as swamp. As the same reason arises upon the facts in
this case as that, in the language of the court, "why should not
the same testimony, subject to cross-examination, be competent,
when the issue is made in a court of justice, to show that the
lands are swamp? The matter to be shown in either case is one
of observation and examination; and there is no reason why
such evidence should be excluded, and the State's rights embar-
rassed, by the non-action of the secretary?"

In *French* v. *Fyan,* 93 U. S. 169, the circumstances under
which the parol evidence was admissible to show that the lands
claimed were swamp and overflowed was considered by the
court, and stated with great precision. That was an action of
ejectment for swamp and overflowed lands, and the only question
raised related to the refusal of the court below to receive oral
testimony to impeach the validity of a patent issued by the
United States to the State of Missouri for the land in question,
under the Act of 1850, the purpose of the testimony being to

show that the land in controversy was not, in point of fact, swamp land, within the meaning of that act. The land had been certified in 1854 to the Missouri Pacific Railroad Company as a part of the land granted to aid in the construction of its road by the Act of June 10, 1852, and the plaintiff had become vested with the title of the company. To overcome this title, the defendant gave in evidence the patent to the State, under the swamp land act, under which he claimed by regular conveyances. The plaintiff then offered to prove, by witnesses who had known the character of the land in dispute since 1849, that it was never wet and unfit for cultivation. The court below refused to receive the testimony, and this is assigned as error. The court say: "This court has decided more than once that the swamp land act was a grant *in præsenti,* by which the title to those lands passed at once to the State in which they lay, except as to States admitted to the Union after its passage. The patent, therefore, which is the evidence that the lands contained in it had been identified as swamp lands under that act, relates back and gives certainty to the title of the date of the grant. As that act was passed two years prior to the act granting lands to the State of Missouri for the benefit of the railroad, the defendant had the better title on the face of the papers, notwithstanding the certificate to the railroad company for the same land was issued three years before the patent to the State, under the Act of 1850; for while the title under the swamp land act, being a present grant, takes effect as of the date of that act, or of the admission of the State into the Union, when this occurred afterwards, there can be no claim of an earlier date than that of the Act of 1852, two years later, for the inception of the title of the railroad company." As to the admissibility of the parol testimony offered to show that the land in the patent was not swamp land, the court say: "The second section of the swamp land act declares 'that it shall be the duty of the secretary of the interior, as soon as practicable after the passage of this act, to make out accurate lists and plats of the land described as aforesaid, and transmit the same to the governor of the State, and at the request of the governor, cause a patent to be issued to the State there-

for. . . .' It was under the power conferred by this section that the patent was issued under which defendant holds the land. We are of opinion that this section devolved upon the secretary, as the head of the department which administered the affairs of the public lands, the duty, and conferred on him the power of determining what lands were of the description granted by that act, and made his office the tribunal, whose decision on that subject was to be controlling."

Here the defendant has not only the older and better title on the face of the papers, but he deraigned his title from a patent issued under the swamp land act to the State. No one can deny but what the land department, in issuing that patent to the State, was acting within the scope of its authority; and that the secretary, as the head of it, in ascertaining and identifying the land described in the patent as swamp, was discharging a duty which the law devolved upon him. Parol evidence, therefore, was inadmissible to impeach the patent, but was conclusive of the legal title within the principle decided in *Johnson* v. *Towsley*, 13 Wall. 72, that "when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others."

But this gives no support to the theory that the remedy of the plaintiff is in equity, upon the facts presented. Taking these to be true, the point of his contention is that the land in controversy had passed from the United States before the defendant's patent was issued. The object of parol evidence in his case is to show that the lands were swamp within the Act of 1860; and when that fact is established, it would follow that such land could not be subject to pre-emption, or be public lands at the disposal of the United States. In such case, the judgment of the land department as to matters properly before it is not attacked, but its authority to act at all is denied, and shown never to have existed. And in *French* v. *Fyan*, the court further remarked, in commenting upon *Railroad* v. *Smith, supra,* upon which reliance was placed for the admission of parol testimony: " The admission was placed expressly upon the grounds that the

secretary of the interior had neglected or refused to do his duty; that he had made no selections or lists whatever, and would issue no patents, although many years had elapsed since the passage of the act." "There was no means, as this court has decided, to compel him to act; and if the party claiming under the State, in that case, could not be permitted to prove that the land which the State had conveyed to him as swamp land was in fact such, a total failure of practice would occur, and the entire grant of the State might be defeated by this neglect or refusal of the secretary to do his duty."

The result of these two last cases cited, *French* v. *Fyan* and *Railroad Co.* v. *Smith*, is thus stated by Mr. Justice Field: "That whenever the secretary of the interior has acted and certified the lists required by the Act of 1850, and issued the patent, his determination is so far conclusive as to the character of the land that it cannot be collaterally attacked. But where he has failed to make such list, and issue the patent, it is competent for the State, or parties claiming from her, to prove, by parol testimony, that the land is of the character mentioned in the Act of 1850 which passed to her." (*Savings Union* v. *Irwin*, 28 Fed. Rep. 711.) The facts stated by the plaintiff present a case where the secretary has failed to make such a list, and issue the patent; and under the authority and reasoning of the cases cited, it is competent for the State, or the plaintiff as her grantee, to prove by parol testimony that the land is of the character mentioned in the Swamp Land Act of 1860, which passed to the State. When this fact is established, any subsequent patent of the United States for the same land must be void, and is examinable at law as well as in equity. In *Wright* v. *Roseberry*, *supra*, which is a more elaborate and authoritative exposition of the law on this subject, the result of these decisions is thus summed up by Mr. Justice Field: "That the grant of 1850 is one *in præsenti*, passing the title to the lands as of its date, but requiring the identification of the lands to render the title perfect; that the action of the secretary in identifying them is conclusive against collateral attack, as the judgment of a special tribunal, to which the determination of the matter is intrusted.

But, when that officer has neglected or failed to make the identification, it is competent for the grantees of the State to prevent their rights from being defeated, to identify the land in any other appropriate mode which will effect that object."

Like other States in which · such swamp lands were situated, the State of Oregon has enacted laws to identify and dispose of them, and for that purpose provided for their survey and sale, and the issue of patents or deeds to the purchasers. Subsequent to the Act of 1850, there has been legislation of Congress designed to remedy or counteract the evils arising from the delay of the secretary, which has recognized the nature of the grant as one *in præsenti*, and the paramount character of the title of the State. The plaintiff is the grantee of the State by deed, and no question is raised as to his deed not having been issued in conformity to the requirements of the act of the legislature for the sale of swamp lands. "The patent of the State," said Mr. Justice Field, "is the conveyance of whatever interest she had at the time in the land; and if it were within the description of swamp and overflowed land, her interest was paramount to that of the United States, unless their title antedates the Act of 1850." (*Savings Union* v. *Irwin, supra.*) As the State of Oregon derives its title to the swamp lands within its territories from the Act of 1860, if the lands in controversy are within the description of swamp and overflowed land, as alleged, the conveyance of the State passed her title to them to the plaintiff, which is paramount to that of the grantee of the United States, unless the title of such grantee antedates 1860. This is not pretended; the admitted facts are otherwise. In such a case, "where a party, whether plaintiff or defendant, asserts title to premises in controversy from a paramount source, or by a prior conveyance from a common source," the doctrine of the conclusive effect to be given to the action of the land department in the issuance of a patent has no application. "The doctrine that all presumptions are to be indulged in support of proceedings upon which a patent is issued, and which is not open to collateral attack in an action of ejectment, has no application where it is shown that the land in controversy had, before the

initiation of the proceedings upon which the patent was issued, passed from the United States. The previous transfer is a fact which may be established in an action at law, as well as in a suit at equity." (*Wright* v. *Roseberry, supra,* 519.) Again, in the same case, it is said: "It would be a most extraordinary doctrine if the holder of a conveyance of land from a State were precluded from establishing his title simply because the United States may have subsequently conveyed the land to another, and especially from showing that years before they had granted the property to the State, and thus were without title at the time of their subsequent conveyance. As this court said in *New Orleans* v. *U. S.* 10 Peters, 662, 731: "It would be a dangerous doctrine to consider the issuing of a grant as conclusive evidence of the right in the power which issued it. On its face it is conclusive, and cannot be controverted, but if the thing granted was not in the grantor, no right passes to the grantee. A grant has been frequently issued by the United States for land which had been previously granted, and the second grant has been held to be inoperative." As a consequence, it must result that when the government has no title to the thing granted, or its officers no authority to issue the grant, such grant or patent must be absolutely void; and in such cases, "the validity of the grant," said Chief Justice Marshall, "is examinable at law." (*Polk* v. *Wendall,* 9 Cranch, 87.)

If anything more could be wanting, the case of *Wright* v. *Roseberry, supra,* is decisive of the point that the remedy of the plaintiff is complete at law. In that case the action was in ejectment to recover a certain tract of land. It was alleged to be swamp and overflowed land, and the title to it, therefore, passed to the State by the Act of Congress of September 28, 1850. The complaint was in the usual form in such actions. All the defendants denied the allegations in the complaint, and set up other defenses, etc. The plaintiffs asserted title to the premises as swamp and overflowed lands by conveyances from parties who had purchased them from the State. The defendants claimed the premises through patents from the United States, issued under the pre-emption laws, or parties from whom

they derived their interest. It is sufficient to say that the trial resulted in a judgment for the defendants, which, on appeal to the Supreme Court, was affirmed; that court holding "that because the commissioner of the general land office had not certified the lands in controversy to the State as swamp and overflowed when the action was commenced, in 1870, there was no title in the State by the grant of 1850 which could be enforced; thus making the investure of title depend upon the act of the commissioner, instead of the act of Congress." For the error in thus holding, Mr. Justice Field said, for the court: "The case must go back for a new trial, when the parties will be at liberty to show whether or not the lands in controversy were in fact swamp and overflowed on the day that the Swamp Land Act of 1850 took effect. If they are proved to have been such lands at that date, they were not afterwards subject to pre-emption by settlers. They were not afterwards public lands at the disposal of the United States. Parties settling upon such lands must be deemed to have done so with notice of the title of the State, and after the segregation map was deposited with the surveyor-general of the State, with notice, also, that they were actually segregated and claimed by the State as such lands." In all substantial particulars, this case is on all fours with the facts of the case in hand, and is decisive that the remedy at law is complete and adequate.

The plaintiff, by deed, which is *prima facie* evidence that the land embraced by it is of the character represented, derives title from the State under the Swamp Land Act of 1860. The secretary of the interior has not certified the lists required by the act, and issued the patent to the State; but the State, in pursuance of legislation, has filed notice of its claim, and the segregation thereof as swamp, including the land in dispute. The defendant claims title by patent from the United States, under the pre-emption laws, upon proceedings subsequent to the Act of 1860. The case of *Wright* v. *Rosebarry, supra,* distinctly decides that the issue of patents for lands, under the pre-emption laws, upon claims initiated subsequent to the swamp land grant to the State, is not conclusive at law, as against parties claiming under

such grant, in an action for their possession. Evidence is admissible to determine whether or not the lands in fact were swamp and overflowed at the date of the swamp land grant, and if proved to be such, the rights of subsequent claimants under other laws are subordinate thereto. (See, also, *Savings Union* v. *Irwin, supra,* 711; *Richter* v. *Riley,* 22 Cal. 639.) Assuming the facts stated as true, if a court of law is authorized to take cognizance, and it is competent to render a judgment which affords a plain, adequate, and complete remedy, the plaintiff has no ground for equitable interference, and the jurisdiction should be rejected. This is understood to be the undeviating practice of this court, when the objection has been raised at the proper time, and insisted upon, as here. In *Phipps* v. *Kelley,* 12 Or. 216, it was said: "A strictly legal right, unaffected by any equitable incident, for which there is a legal remedy, adequate and speedy for its enforcement or protection, is not properly a subject-matter under the legitimate province of equity, and of which equity could take cognizance without deposing the defendant of his constitutional rights to a trial by jury. This is a highly valued right, to which the people are attached, or the legal settlement of disputed questions of fact, and which they have secured by constitutional guaranty, to the end that no one should be deprived of it except for proper and specified cause."

The requirements of the law, therefore, make it our duty to affirm the decree dismissing the complaint, and it is so ordered.

STRAHAN, J., concurring. —If the act of Congress extending the swamp land grant to Minnesota and Oregon be a grant *in præsenti,* without qualification or reservation, the title to all such lands passed to the State; then, if the plaintiff has that title, his remedy is undoubtedly at law. Any subsequent grant or sale by the government of the same lands would be a nullity; but if the proviso in the act is a limitation upon the granting clause, or in the nature of a reservation, then I am inclined to think that the government was authorized to make sales of swamp lands in Oregon at any time prior to the confirmation of title *to*

*be made* under the authority of said act.   And in that view the plaintiff would necessarily be without title, and without remedy, and Tobin's title would be perfect on the admitted facts.   But, if my impressions are correct on this point, then the opinion is undoubtedly correct, and the plaintiff's remedy is at law.

A brief reference to the acts of Congress will make clearer the reasons for the doubts entertained.   The first section of the Act of September 28, 1850, is as follows: "To enable the State of Arkansas to construct the necessary levees and drains, to reclaim the swamp and overflowed lands therein, the whole of those swamp and overflowed lands therein, made unfit thereby for cultivation, which shall remain unsold at the passage of this act, shall be, and the same are hereby granted to said State." The second section is in these words: "It shall be the duty of the secretary of the interior, as soon as may be practicable after the passage of this act, to make out accurate lists and plats of the lands described as aforesaid, and transmit the same to the governor of the State of Arkansas, and cause a patent to be issued to the State therefor; and *on that patent the fee-simple to said lands shall vest in said State of Arkansas,* subject to the disposal of the legislature thereof. . . . ."   The first section of the act of Congress extending the provisions of said last-recited act to Minnesota and Oregon is as follows: "That the provisions of an act of Congress, entitled, 'An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits,' approved September 28, 1850, be, and the same are hereby extended to Minnesota and Oregon, *provided,* that the grant hereby made shall not include any lands which the government of the United States may have reserved or sold (in pursuance of any law heretofore enacted), prior to the *confirmation of title to be made* under the authority of this act.

This cause has been twice argued, once at the March term, 1886, and again at the succeeding October term; but, owing to the importance of the questions involved, we have thought it best to give them a careful and deliberate examination before announcing our conclusions.   A number of very important questions were suggested at the argument, but I do not find it

necessary to consider but one, and that is the construction and effect of the proviso to the Act of March 12, 1860, as applied to the facts of this case.

The rule of statutory construction is a familiar one, that all acts relating to the same subject are in *pari materia,* and are to be construed as though their several provisions were incorporated together, and constituted one entire act. Equally well settled is another rule of construction, and that is that every word in a statute must be given its proper meaning and effect, if possible. And our Code (§ 684) declares another rule quite as important and salutary, as follows: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and, where there are several provisions or particulars, such construction is, if possible, to be adopted, as will give effect to all." The effect of this proviso was incidentally considered by this court in *Gaston* v. *Stott,* 5 Or. 48. It is there said: "The exception of any lands which the government of the United States may have reserved, sold, or disposed of (in pursuance of the law heretofore enacted) prior to the confirmation of title to be made under authority of said act, is repugnant to the purview of the act, and cannot stand. We cannot bring ourselves to believe that Congress intended to take away any part of the particular lands granted by the body of the act, by the subsequent general words quoted." I cannot assent to this construction. The intention of Congress in making this grant is to be gathered from the language used, from the circumstances attending the enactment, and from contemporaneous history. The operation of no part of the act can be overthrown by conjecture. It is plainly susceptible of such construction, as that the entire act may have effect, and I am wholly unable to perceive that irreconcilable repugnancy which is claimed to exist, and I am therefore unable to yield to the criticism of this court above quoted. The construction claimed for this part of the act expunges it from the act itself, just as effectually as if no such language had ever been used therein. As at present advised, I

cannot accede to this view.  It is a fact fully shown by the reports and decisions of the courts of last resort, in the various States in which large quantities of swamp land were situated, that after the passage of the Act of September 28, 1850, serious conflicts and complications grew out of its execution, and many land titles were consequently left in a state of very great uncertainty.  So great had the evil become that Congress was compelled to and did interfere, and passed various confirmatory acts applicable to particular States in favor of the actual settlers on such lands, as well as in favor of the States claiming under the swamp land grant.  And whenever Congress did act on this subject, the rights of settlers on such lands were always protected.  In many instances, doubtless, the States lost lands to which they were actually entitled under the grant, but it is believed that in every instance when such claim was *bona fide* and just on the part of any State, it was recognized by Congress, and its settlement provided for, sometimes by the selection of other lands in lieu of those taken by settlers, and, in other instances, by turning over to the States the money actually received upon the sale of such lands.  It must be observed that the policy was pursued in executing the Act of September 28, 1850, which did not contain the proviso found in the Act of 1860, " An act for the relief of purchasers and locators of swamp and overflowed lands," which may be found in the United States Statutes at Large, volume 10, page 634, is an example of the class of legislation referred to, and is general in its operation.

This act contains but two sections.  The first, in effect, provides that, as soon as practicable, the president should cause patents to be issued to the purchasers or locators who had entered public lands, claimed to be swamp lands, either with cash or with land warrants or scrip, prior to the issue of patents to the States, as provided by the second section of the swamp land act, any decision of the secretary of the interior or other officer of the government to the contrary, notwithstanding; except that, in cases of sale by the States before entry under the laws of the United States, no patent should be issued until the State should release; but, if the State omitted for the space of

ninety days to forward lists of the lands so sold, that then patents should issue as before ordered without delay. The second section provided for indemnity to the State, by ordering that the purchase price, in case of cash sales by the United States, should be paid over to the State, and, in case of sales for warrants or scrip, that the State should have other lands to be selected by it from any of the public lands subject to entry, and for which it should receive a patent.

I therefore conclude that when Congress extended the swamp land grant to Minnesota and Oregon, the proviso was inserted by way of reservation of the power to dispose of such lands pending the adjustment of the grant, so that there should be no question whatever touching the title. A good reason for the insertion of this proviso is apparent. Experience has show. that occasional settlements would be made on lands allege⁻; be swamp or overflowed; generally in those cases where t: swampy character of the land was doubtful. Congress designed the reservation, then, not to deprive the State of the benefits to be derived from the grant, but to relieve the title of a settler from all doubt; leaving the State to pursue such remedy for her lands, if any, as Congress had or might provide. The Act of September 28, 1850, must be read with the proviso under consideration, appended or inserted at the end of the first section, so that the granting clause in said act is expressly limited and controlled by the words of the proviso. The effect of this construction is that the grant does not include any lands which the government of the United States may have reserved, sold, or disposed of in pursuance of any law theretofore enacted, "*prior* to the confirmation of title *to be made* under the authority of said act." The granting of a patent to a pre-emption claimant of said lands is a "disposition" thereof; it is in pursuance of a law before that time enacted; it was prior to the confirmation of title *to be made* under said act. If these views are correct, the defendant's title is protected by the proviso, and cannot be disturbed in this suit.

Under this view of the swamp land grant, when a settler takes a pre-emption claim under the laws of the United States,

on lands claimed by this State as swamp or overflowed, and such lands shall be patented to such settler by the United States prior to the confirmation of the grant to the State, such settler, in the absence of fraud, acquires a perfect title, although the land was in fact swamp and overflowed, within the meaning of the act of Congress making the grant to the State.

Entertaining these doubts as to the true construction of the proviso of the act, I place my concurrence in the affirmance of the decree, upon the ground that the plaintiff had a complete and adequate remedy at law.