## HENDRY V. WILLIS.

| 33 | 833 |
|----|-----|
| 54 | 255 |
| 33 | 833 |
| 55 | 290 |
| 33 | 833 |
| 74 | 206 |
| 74 | 402 |

1. SWAMP LAND ACT: The swamp land act of September 28, 1850, made a grant *in presenti* of all lands coming within the description of the act. When they are properly designated and ascertained, the grant relates to the date of the act.

2. SAME: It made the Secretary of the Interior the judge of the lands coming within the meaning of the grant, and his decision, on this point, in the absence of fraud or imposition, is final.

3. STATE'S PATENT: *Evidence; Recitals.*

   The State's patent for swamp lands may issue at any time after the selection is confirmed, and is evidence of title in the grantee, and *prima facie* evidence of all facts recited in it, which are necessary to confer the power to issue it.

4. EVIDENCE: *Official letters; Exemplifications of record.*

   A letter from the Commissioner of the General Land Office, stating what does or does not appear on his records, is not evidence of the facts stated. Matters of record must be proved by exemplifications of the record. Negative matter may be proved by the testimony of those familiar with the record and papers, but the testimony must be taken as of any other fact. Letters will not do.

APPEAL from *Sebastian* Circuit Court.

Hon. R. B. RUTHERFORD, *Special Judge.*

*Du Val & Cravens*, for appellant.

EAKIN, J.:

This is an action at law by Hendry against Willis, begun August 25, 1873, to recover land. Plaintiff claims, under a patent from the Governor of the State, executed March 13, 1872. The patent, in its preamble, recites the passage of the act of Congress of September 28, 1850, granting swamp and overflowed lands to the State; that under the provisions of the State acts, the Land Commmissioner of the State, on the 27th day of February, 1872, granted a certificate to and in favor of plaintiff for the lands described; that on the 13th day of March, 1872, he had certified that said lands had been confirmed by the United States to the State of Arkansas, as a por-

52

tion of the lands granted by said act; and that the purchase money had been fully paid.

Defendant relied upon a patent from the President of the United States, dated August 15, 1860, issued to his grantor upon the location of a military bounty land warrant, in pursuance of an act of Congress approved March 5, 1855, with continued possession in his grantor and himself, and the statute of limitations. He further showed, upon trial, that the purchase of the land from the United States was made on the 6th day of September, 1858, and, as the bill of exceptions states, "proved by several witnesses that the premises in controversy were not swamp and overflowed lands."

Upon the trial, defendant, against the objections of plaintiff, was allowed to introduce, as evidence, an exemplification under the hand and seal of the Commissioner of the General Land Office, of the *official record of a* letter from the Acting Commissioner of the General Land Office, dated August 11, 1877, to *Curtis & Earle*, attorneys at Washington City. The letter purports to be in response to an inquiry, and says that the land in question, describing it, "does not appear on our records as a swamp land selection."

It happened, on trial, after the evidence was closed and the instructions settled, that plaintiff offered to introduce a deposition of J. N. Smithee, Commissioner of State Lands, which had been taken in the case by agreement of attorneys. The bill of exceptions states that this "had been overlooked by plaintiff's counsel, who had come into the case just before the trial, to represent plaintiff's counsel, who was absent." Leave to read the deposition was refused. If admitted, it would have shown to the jury that the records of his office had been mutilated to such an extent as to prevent him from saying whether or not the land in question had ever been patented to the State from the United States government, but it was

selected as swamp land under the act of Congress of September 28, 1850, and confirmed to this State by the United States government on the 14th of July, 1853, on list No. 1, Clarksville district, and that the entry appears to be regular and without conflict.

The court, for the plaintiff, instructed the jury if they found the lands had been confirmed to the State by the United States on the 14th of July, 1853, and that defendant was in possession, to find for the plaintiff; and that the Governor's deed was evidence of title; but refused to instruct that it was evidence of the facts therein recited.

For the defendant the court instructed: That to enable the plaintiff to recover, it must appear that the lands were selected, confirmed and deeded to the State as swamp and overflowed lands; that the defendant was entitled to a verdict on his patent from the United States, if it were the first and only deed, and the lands had not been confirmed to the State; and that the deed from the Governor, although *prima facie* evidence of title, conveyed only such title as the State had at the time of the sale.

A verdict for defendant. A motion for a new trial was overruled, and plaintiff appealed.

It is well settled that the act of September 28, 1850, made a grant to the State, *in presenti*, of all lands coming within the description. When they are properly designated and ascertained, the grant relates to the date of the act.

By the second section of the act it is made the duty of the Secretary of the Interior to ascertain the lands passed by the grant, transmit a list of them to the Governor, and, when requested by the Governor, cause a patent to be issued to the State.

The power making the grant could impose its own conditions. It constituted the Secretary of the Interior the judge

of the lands in the State coming within the meaning of the grant, and his decision on this point, in the absence of fraud or imposition, should be considered final in all courts.

The act did not prescribe for the Secretary any mode or agencies for making out his list for transmission. The plan adopted has been so long in public use in the land departments of the Federal and State governments, and has been so often alluded to in legislation, that the laws of the State cannot well be construed without taking judicial cognizance of the system. The selections have been, in fact, made by agents of the State, sent to the Secretary of the Interior, through the Commissioner of the General Land Office, approved and returned to the Governor. These tests, so approved, have been properly marked upon the plats, and filed amongst the archives of the land office of the State. They have, from time to time, been, with all other books, papers and other matters concerning the State lands, transferred from one custodian to another, upon whom the duty of keeping them has been imposed. When these lists, so approved, have been transmitted to the Governor, they have been treated in our legislative and official acts as *confirmed,* and so we must understand the word.

At the time of the execution of plaintiff's deed by the Governor, he was authorized by law to make it, upon being satisfied that the lands were confirmed, and the price paid the State. The right was determined by the confirmation, which fixed the character of the land, and vested it by relation, as of the date of September, 1850. The deed became evidence of title, because it was made in pursuance of law, and *prima facie* evidence of all those recitals in it necessary to confer the power. It would be attended with inconceivable inconvenience if every holder of the Governor's patent for swamp lands were obliged to fortify his deed with proof *aliunde,* that the lands were of the character described in the congressional grant, had

Hendry vs. Willis.

been confirmed to the State, and duly purchased by him and paid for. The court erred in declining to instruct the jury that the recitals of these facts in the patent made a *prima facie* case for the plaintiff.

It follows, also, from the authority given to the Secretary of the Interior under the act, that after confirmation of the lands by him to the State, the character of the land, as swamp and overflowed, would be conclusively fixed as against the United States, or any one holding under it by patent after confirmation. Whether such confirmation would preclude proof as to the real character of lands sold by the United States, or the State, after the passage of the act and before confirmation, is a question not necessary here to determine. It is enough to say that if the lands be really swamp and overflowed, the *right* vests in the State by the act, and when the *fact* is determined, by whatever method, this right has relation to the date of the passage of the act. Of course it would have no application to lands never selected.

There is no proper proof in this case that the lands were *not* swamp and overflowed at the time of the congressional grant. The language of the bill of exceptions, is: "Defendant then proved, by several witnesses, that the premises in controversy were not in fact swamp or overflowed land." This is setting forth the result of the testimony rather than the testimony itself; but waiving that, the proof refers to the time of trial, nearly thirty years after the act. From divers natural and artificial causes, the surface of the earth is continually changing, and lands which were wet, overflowed and unfit for cultivation in 1850, may be now high and arable; and so *vice versa.*

The letter from the Acting Commissioner to the law firm of Curtis & Earle, was not admissible to prove facts stated in it, or absence of facts. It was mere heresay. Nor could it be made evidence by any rule of the office requiring such letters

to be copied, and giving them the character of quasi records. Certified copies of them could only be evidence that such letters were written, not of the facts they contain, whether affirmative or negative. Negative matter can rarely be proved by the testimony of those familiar with the records and papers; but the testimony must be taken as for any other facts. Letters will not serve the purpose as between third parties. The court erred in letting the letter in question go to the jury. They were thus warranted by the court to find that the lands in question had never in fact been selected, and believing that, could not do otherwise than find for the defendant.

The application of plaintiff to read the deposition of Smithee after the evidence had been closed and the instructions settled, upon the ground that the attorney was not well acquainted with the case, and had overlooked it, was addressed to the sound discretion of the presiding judge. It devolves upon the Circuit Judges to preserve the due order of proceedings in their courts, and prevent the practice from falling into that utter confusion to which, since the change to the Code system, it seems to be tending. To them is now entrusted the delicate duty of building upon the Code and moulding a clear, rational system of practice, adapted to the despatch of business, and the efficient administration of justice. In doing this they must exercise their discretion very frequently, and they can better judge of the circumstances affecting any particular motion than we can here. For instance, it seems to us here that justice required that the testimony should have been admitted upon the explanation given. It would not have taken the adverse party by surprise. But it was unimportant. So much of it as went to show that the lands were included in the confirmation list of 1853, was incompetent. That list was a part of the official documents in his office, of which he was custodian, and what the list showed should have been proved by exemplifica-

Hendry vs. Willis.

tion. The deposition would only have been of use to show the mutilation of the records, and thus explain the want of proof of the issuance of a patent to the State. If this were all, we would be loth, on this account, to declare it. an abuse of discretion and disturb the verdict.

For the error of the court in admitting improper testimony, and refusing proper instructions asked by the plaintiff, the new trial should have been granted.

Reverse and remand for a new trial and further proceedings consistent with this opinion.