## STATE *v*. COX.

### Opinion delivered July 3, 1922.

1. HIGHWAYS—TRANSFER OF WAR MATERIAL TO STATE.—Under Acts of Congress of Feb. 28, 1920, providing for distributing war material suitable for use in the improvement of highways, and act of Congress of March 15, 1920, fixing the amount to be paid therefor to the United States by the States and providing that the title thereto shall be vested in the State for use in improving highways, the State had title to such property so donated, provided the State under its statutes had the right to accept the donation.

2. HIGHWAYS—HIGHWAY COMMISSIONER AUTHORIZED TO RECEIVE DONATIONS.—Under Crawford & Moses' Dig., §§ 5165, 5168, creating the State Highway Department and the State Highway Commission, and §§ 5198-9, *Id.*, relative to the receipt of Federal aid, the State Highway Commissioner had power to apply for and receive, on behalf of the State, donations of war material from the United States.

3.  HIGHWAYS—FUNDS DERIVED FROM SALE OF WAR MATERIAL.—Under Crawford & Moses' Dig., § 5199, funds derived from the sale or rental of property donated by the Federal Government for aid in road building is not payable into the State Treasury, but is to be kept by the Commissioner of Highways in a separate account.

4.  HIGHWAYS—RIGHT TO DISPOSE OF WAR MATERIAL DONATED TO STATE. —The donation of war material by the United States, when accepted by the State through the Commissioner of Highways, constituted a present gift and vested the State with the absolute power of disposition, through its Highway Department.

5.  HIGHWAYS—AUTHORITY OF STATE TO SELL UNSERVICEABLE WAR EQUIPMENT.—Under act Cong. March 15, 1920, § 5, providing that vehicles and equipment in serviceable condition donated to the States for road-making purposes shall not be sold to any individual, company or corporation, the State has authority to sell equipment which, though virtually new, is not serviceable for the building of highways in the State.

6.  HIGHWAYS—AUTHORITY OF HIGHWAY COMMISSIONER.—The State is bound by the act of the Commissioner of State Highways in selling road-making equipment donated by the Federal Government under Acts of Cong. of Feb. 28, 1919, § 7, and of March 15, 1920, when not in a serviceable condition.

7.  HIGHWAYS—AUTHORITY OF STATE AS TO DISPOSITION OF WAR MATERIAL.—While the title to machinery and equipment donated by the Federal Government under Acts of Cong. of Feb. 28, 1919, and March 15, 1920, is held absolutely by the State, and not in trust, and its power of disposition is unrestricted, it must see that the property so received is administered for road-building purposes, and may repudiate the acts of its highway officers as *ultra vires* and void if they fail to dispose of the property in accordance with the Acts of Congress.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants; *George Vaughan,* special counsel.

1.  Plaintiff is the owner, and entitled to the immediate possession of the property in controversy. Congress by express enactment (§ 7 of postoffice appropriation act of February 28, 1919) authorized the Secretary of War in his discretion to transfer to the Secretary of Agriculture "all available war material and supplies

\* \* \* \* *suitable for use in the improvement of highways* \* \* \* \* of the several States *to be used on roads constructed in whole or in part by Federal aid."* 40 Stat. L. 1201.

The Wadsworth-Kahn act of Congress, approved March 15, 1920, expressly provided a restriction in keeping with the policy of the first act to the effect that "no more \* \* \*. \* material, equipment and supplies \* \* \* \* shall be transferred \* \* \* than said Department of Agriculture *shall certify can be efficiently used for such purposes* within a reasonable time after .such transfer." Express authority was contained in section 2 for the transfer of certain specific units to which the item now in dispute belong. Section 4 provided for reimbursement of the War Department by the department to which the property is transferred, of freight charges and expense of loading, and further provided that "any State receiving any of said property *for use in the improvement of public highways"* shall pay 20 per cent. of its estimated value, against which the State may set off the freight charges paid by it on the shipment. Section 5 fixes the title of such allotment in the State, for use in the improvement of public highways, etc.

The record affirmatively shows a request for the items now in suit by the State Highway Commissioner to the bureau of public roads, war materials division, Department of Agriculture, and specific shipping instructions issued by the chief of the bureau of public roads covering these items.

There is therefore no question but that the disputed units of material and equipment became the lawful property of the State. It is not material in this inquiry whether the property was impressed with a trust, or whether the right of disposal was absolute or qualified. Special ownership is sufficient to support the action of replevin. C. & M. Digest, § 8640; 37 Ark. 64; 67 *Id.* 135; 53 S. W. 678; 34 Cyc. 1390; *Id.* 1468; 23 R. C. L. 864, § 14.

2.   The attempted transfer by the highway commissioner was unauthorized and unlawful, and vested no title, either legal or equitable, in the defendants.  By the limitations placed upon the *use* to which the materials should be put, and the *condition* under which it might be alienated, Congress may well be said to have created a trust estate in the beneficial allottees.  39 Cyc. 17; 12 N. Y. S. 815.  The subject-matter of trusts is not limited to real property.  31 Ark. 119; 25 R. C. L. "States," 389, § 22; 1 Perry on Trusts, 6th Ed., § 67; 37 Cyc. 36; *Id.* 51; 26 R. C. L. 1171, § 6 ; Perry on Trusts, § 41.

Although there is no affirmative acceptance of a trust, yet acceptance may be implied.  3 Pomeroy, Equity, §§ 1007, 1060.  The language of the Acts of Congress and that of the certificate of the Highway Commissioner that the property would be used for the purpose intended, together with the acceptance of the consignor and consignee, are sufficient to create a trust.  26 R. C. L. 1179-1180.  That authority to enforce a Federal statute or a national policy, of the nature involved here, may be conferred upon State officers as such, and that such officers may execute the same unless prohibited by the Constitution or statutes of the State, is no longer open to question.  16 Pet. 539, 622; 10 L. Ed. 1060; 197 U. S. 169, 174; 25 S. C. 422; 49 L. Ed. 709.

Only the Legislature may authorize the sale or transfer of public property.  36 Cyc. 870; 25 R. C. L. "States", 392-3. §§ 25, 26.

The State Highway Department is not one operated for gain.  It is a creature, and within the exclusive control, of the Legislature, charged with the performance of a definite assignment of the manifold functions of State government.  In view of the Federal aid laws, this department operates as an indispensable cog in co-ordination with the National Government in promoting the cause of good roads.  151 Cal. 797; 91 Pac. 740; 154 Cal. 119; 97 Pac. 144, 148.

The State may hold title to property in two distinct capacities—one as proprietary, and the other in a sovereign or governmental role. 157 Pac. 1097-8.

Not only must express authority exist for disposing of public property, but statutory procedure must be strictly pursued. 24 Minn. 332; 76 Ark. 167, 88 S. W. 888.

The State is liable only to the extent of the powers actually given to its officers, and not to the extent of their apparent authority. All who deal with a public agent must at their peril inquire into his real power to bind his principal. 39 Ark. 508-3; 42 *Id.* 118; 66 *Id.* 48, 52; 51 S. W. 68; 70 Ark. 568, 578; 69 S. W. 559; Throop, Public Officers, p. 523 § 551; 44 Ark. 437; 47 *Id.* 205; 7 Wall. (U. S.) 666; 25 Ark. 261; *Id.* 273.

The language of section 5 of the Wadsworth-Kahn Act excludes the possibility of alienation except in two contingencies, viz: if unserviceable, *sale* may be made to any "individual, company or corporation"; otherwise by *rental* to a "State agency or municipal corporation" at not less than the cost of upkeep, but this use must be "for the purpose of consructing or maintaining public highways." If the language of the Acts of Congress, which are the source of the State's title, are to be strictly construed, then due import must be given to the word "serviceable" therein employed. Georgia courts have construed the term. 25 S. E. 428; 132 Ga. 445, 64 S. E. 475; 91 S. E. 771.

3. The defendants are not entitled to any relief on their cross-complaint, as against the State. Const. art. 5, § 20; C. & M. Dig., § 9294; *Id.* § 9303; 19 Ark. 559, 562.

Defendants' pleadings nowhere ask relief against the State. A suit to compel the State to perform its contract cannot be maintained. 108 Ark. 60, 67; 156 S. W. 839 45 L. R. A. (N. S.) 731; note 68 Am. St. Rep. 753; 6 Pomeroy, Eq. Jur. § 759. See also 106 Ark. 174; 121 *Id.* 489. Our statute expressly forbids the allowance of any debt or claim by way of set-off in a suit on behalf of the State. C. & M. Dig., § 9303. It has been held that

no principle of direct set-off or recoupment will authorize the allowance of a claim of a defendant for damages, liquidated or unliquidated, against a claim of the State. 18 Md. 193; 59 Hun. 299; 12 N. Y. S. 936; 128 N. Y. 640, 29 N. E. 147; 51 N. Y. S. 747; 156 N. Y. 693; 51 N. E. 1093; 56 Cal. 401; 65 N. C. 406; 14 S. C. 135; 16 S. C. 533; 87 Tenn. 725; 11 S. W. 935; 10 Am. St. Rep. 712; 2 Tex. 616; 31 Md. 344; 46 La. Ann. 431; 15 So. 174. See also 33 L. R. A. (N. S.) 378; 91 Ark. 527; 98 *Id.* 525; 35 *Id.* 565; 161 U. S. 10; 40 L. Ed. 599; 202 U. S. 473; 50 L. ed. 1113; 123 U. S. 443; 31 L. ed. 216; 263 Fed. 410; 117 U. S. 52; 140 U. S. 1; 172 U. S. 516; 105 Fed. 459; 107 U. S. 711; 33 L. R. A. (N. S.) 376, Note; *Id.* p. 379, note.

Equity follows the law in matters of set-off. 34 Cyc. 635. Defendant cannot avail himself of a set-off, because the demand is uncertain in its nature, and it is no justification of a tortious act that the plaintiff is indebted to the defendant. Waterman on Set-Off, Recoupments and Counterclaim, 2nd Ed. 169, § 42; Cobbey on Replevin, 2nd ed., §§ 791, 792; Shinn on Replevin, § 589; Morris on Replevin, 165; Wells on Replevin, § 630.

*Mehaffy, Donham & Mehaffy,* for appellees.

1. The State is not the owner of the property and not entitled to possession. Appellees are not bound by the provisions of the Wadsworth-Kahn act, since this property may be some of the equipment acquired under the postoffice appropriation act of February 28, 1919. If it was so acquired, it was an absolute gift on the same basis as money given to the State under the Federal aid road act of July 11, 1916, and Commissioner of State Lands, Highways, etc., was the proper person to receive and dispose of the same and apply the funds obtained to work of his department in road building.

If the property came to the State under the act of February 28, 1919, plaintiff is not entitled to relief under the provisions of the Wadsworth-Kahn act, and the

burden is on the State to show that the property came to it under the later act.

The term "serviceable condition" in section 5 of the Wadsworth-Kahn act must be given its ordinary and commonly accepted meaning. Under no rule of construction could it be made to mean "new" or "unused." The three Georgia cases cited by appellant sustain appellee's contention on this point.

If it be true that the property came to the State under the later act which provided that no equipment in serviceable condition could be sold, then the donation of this equipment was a grant *in praesenti,* and when it came into possession of the State it became a gift absolute. 31 Ark. 119; *Id.* 833; 54 *Id.* 251; 24 *Id.* 431.

The State, through its Legislature, had designated the Commissioner of State Lands, Highways and Improvements as the proper person to receive payments from the United States Government. C. & M. Digest, § 5199. There is no question but that he had full authority under the above section to receive this property, sell the same, and apply the proceeds to the building of highways. And it is clear that there is no necessity for money so derived to go into the State Treasury.

Since, by virtue of the foregoing legislative enactment, the commissioner was the proper person to receive and dispose of the property, his acts were the acts of the State, and the latter cannot question them. The Federal Government alone could complain if the money was not spent, or the property not handled, in accordance with its regulations. In the absence of a showing of fraud, the commissioner's action in disposing of the property is presumed to have been legal and proper. He is presumed to have performed his duty. 22 R. C. L., §§ 143, 145, 146, pp. 472-4; 38 Pa. Sup. Ct. 437; 74 Atl. 392; 123 Pac. 8; 88 Ark. 37; 4 *Id.* 251; 96 *Id.* 424.

2. If the State is the owner and entitled to possession, it cannot obtain the relief sought without reimbursing the defendants. She comes into court divested of

her sovereignty, and is bound by the same equitable rules that govern a private suitor. 45 Ark. 88; 57 Ark. 480; 98 *Id.* 125; 52 *Id.* 157; 1 Pomeroy, Eq. Jur. 4th ed., § 385; *Id.* 388. See also 114 Ark. 289.

*J. H. Carmichael* and *Rowell & Alexander* filed separate briefs as *amici curiae.*

WOOD, J. This is an action of replevin begun in the Pulaski Circuit Court, Second Division, and afterwards, by consent of parties, transferred to the Pulaski Chancery Court. The action is to recover the possession of certain articles of industrial machinery and supplies therefor. The description and value thereof are set forth in the complaint. The facts, so far as it is necessary to set them out, are substantially as follows:

The property in controversy had been transferred by the War Department to the Federal Department of Agriculture, under the authority of section 7 of the Postoffice appropriation act of Congress, approved February 28, 1919. Upon the requisition of William B. Owen, the then Commissioner of Highways in Arkansas, the Secretary of Agriculture forwarded the property to the Highway Department of the State of Arkansas. In his requisition the Commissioner of Highways certified that the property would be used in the improvement of the public highways in this State, in accordance with the provisions of § 5 of the act of Congress, March 15, 1920, known as the Wadsworth-Kahn act. Acting under the authority of a resolution of the State Highway Commission, passed January 31, 1920, Commissioner Owen on October 15, 1920, executed to Hot Spring County, Arkansas, what is designated as a "lease" whereby the Commissioner leased to Hot Spring County the property in controversy for the period of twenty years, the consideration named being the rental price of $9,250 cash. On the 18th of November, 1920, C. F. Berry, county judge of Hot Spring County, under a written instrument undertook to "transfer and donate" to the defendants, residents of Malvern, Hot Spring County,

Arkansas, all of the right, title and interest to Hot Spring County to the property in controversy. No consideration was named for this transfer, but it was in proof that the real consideration were certain checks of the defendants, aggregating the sum of $9,250, payable to W. B. Owen, Commissioner of Highways, which were deposited and passed to his credit in a special account or "war equipment fund" controlled and maintained by him with the People's Savings Bank of Little Rock, Arkansas. These funds never reached the State Treasury.

In 1921 the Federal Government demanded an accounting of the State of Arkansas of the war surplus equipment allotted to it. Growing out of the investigation by the agents of the Federal Government, in collaboration with the Highway Department and the office of Attorney General, incident thereto, the present action was instituted by the State through her Attorney General to recover possession of the property.

The defendants, in their answer, set up that they were in lawful possession of the property as *bona fide* purchasers at a valid sale thereof made by the Commissioner of Highways. By way of cross-complaint they set up that they were innocent purchasers, and that the present Highway Commission, composed of the Commissioner and his two associates, were necessary parties to the action; that in order to protect the defendant, if it were decided that they were not innocent purchasers and not entitled to the possession of the property, the Highway Department should in equity be required to return the money paid to it by the defendants for the property.

At the hearing the court found that the disposal of the property by the State Highway Commission was unauthorized, contrary to law, and that therefore no title passed to the defendants; that the plaintiff was entitled to the possession of the property upon the payment to the defendants of the sum of $9,250, which they had paid to the Highway Department for the proper-

ty. The court entered a decree according to its finding, and directed that the State of Arkansas have until April 1, 1923, to arrange for the payment of the sum of money decreed to reimburse the defendants, and that upon the payment of such sum by the plaintiff to the defendants the possession of the property should be delivered to the plaintiff. From that decree the plaintiff prosecutes this appeal, and the defendants have prayed here and been granted a cross-appeal.

1. The first question to be determined under the issues and facts presented by this record is whether or not the State is entitled to the possession of the property in controversy. A proper solution of the question involves a construction of the acts of Congress under which the Highway Department of the State of Arkansas received the property in controversy, and the statute of the State governing the disposition of such property by such department. It is conceded that the United States Government is the source of title to the property in controversy. Sec. 7 of the act of Congress of February 28, 1919, entitled "An act making appropriation for the services of postoffice," etc, 40 Statute Laws, p. 1201, authorized the Secretary of War, in his discretion, to transfer to the Secretary of Agriculture "all available war material  * * *  suitable for use in the improvement of highways,  * * * *  the same to be distributed among the highway departments of the several States to be used on roads constructed in whole or in part by Federal aid."

An act of Congress approved March 15, 1920, entitled "An act to authorize the Secretary of War to transfer certain surplus motor-propelled vehicles and * * * road-making material to various services in departments of the Government and for the use of the States", 41 Public Laws, p. 530, authorizes the transfer of the property of the kind here in controversy from the War Department to the Department of Agriculture. That act contains a provision that "any State receiving

any of said property for use in the improvement of public highways shall, as to the property it receives, pay to the Department of Agriculture the amount of 20 per centum of the estimated value of said property, * * * * against which sum the said State may set-off all freight charges paid by it on the shipment of said property, not to exceed, however, said twenty per centum.'' And the further provision: ''Sec. 5. That the title to said vehicles and equipment shall be and remain vested in the State for use in the improvement of the public highways, and no such vehicles and equipment *in serviceable condition* shall be sold or the title to the same transferred to any individual, company, or corporation: Provided, that any State Highway Department to which is assigned motor-propelled vehicles and other equipment and supplies, transferred herein to the Department of Agriculture, may, in its discretion, arrange for the use of such vehicles and equipment, for the purpose of constructing or maintaining public highways, with any State agency or municipal corporation, at a fair rental, which shall not be less than the cost of maintenance and repair of said vehicles and equipment.''

It is in proof that the Highway Commissioner of Arkansas obtained the property in controversy according to the methods prescribed by the Federal Department of Agriculture. Therefore, unquestionably, under the above acts of Congress the State had title to the property at the time it was disposed of by the Commissioner of Highways of the State, provided the State under our statute had the right to accept the donation.

2. Did the State Highway Commissioner have authority to dispose of the property in the manner adopted by the State Highway Commission and pursued by him as above set forth? The State Highway Department and the State Highway Commission were created by the act of March 31, 1913, secs. 5165 and 5166, C. & M. Digest. Act 105, entitled ''An act to provide that the State of Arkansas shall accept aid from the Federal

Government for the construction of rural post roads * * * * and for other purposes," approved February 20, 1919, provides, among other things, a method of procedure for the State to pursue in procuring Federal aid for constructing or improving State roads. See secs. 5198 and 5199, C. & M. Digest. The latter section reads as follows:

"The Commissioner of State Lands, Highways and Improvements is hereby designated as the proper officer to receive payments as they shall be made by the Secretary of the Treasury of the United States; said Commissioner shall keep a separate set of books showing all such payments made by the United States and the road or the road improvement district to which it is to be applied, showing all disbursements of money so received from the United States Government. The moneys shall be paid out of this fund received from the United States in accordance with the regulations prescribed by the proper authorities of the United States Government. And provided, further, the State Highway Commission is authorized, for and on behalf of the county judge, to enter into all necessary agreements with the Department of Agriculture of the United States, for carrying out the rules and regulations of the Secretary of Agriculture in granting aid to any county or road improvement district for the building of rural post roads."

It will be observed that the Commissioner of State Highways is designated by the above statute to receive payments and make disbursements of moneys received from the United States under the Federal aid road law of July 11, 1916, according to the regulations prescribed by the proper authorities of the United States, and that the said highway commission is authorized to enter into all necessary agreements with the department of Agriculture of the United States for carrying out the rules and regulations of the Secretary of Agriculture in granting aid for the building of rural post roads. The State. Highway Department must disburse all moneys

received from the United States government in accordance with the regulations prescribed by the proper authorities of the Federal Government.

Under the broad powers conferred upon the Commissioner of State Highways and upon the State Highway Commission it was unnecessary for the Legislature to pass a special act authorizing the acceptance by the State of the donation by the Federal Government of its surplus war material and supplies suitable for use in the improvement of highways and to be used on roads constructed in whole or in part by Federal aid. The Federal aid road act of July 11, 1916, expressly provides that "the Secretary of Agriculture is authorized to cooperate with the States, through their respective State Highway Departments, in the construction of rural post roads." Under the authority of the above laws, State and Federal, already existing, it was within the power of the Commissioner of Highways acting for the State Highway Department, to apply for and receive the donation of the property in controversy, to be used on roads that were being constructed in whole or in part by Federal aid. Under the State and Federal statutes the Commissioner of State Highways had the authority to receive the property in behalf of the State and to use the same or the proceeds thereof for the purpose of constructing and maintaining public roads as contemplated by the acts of Congress and the State statute above mentioned. It is clear that the funds derived from the sale or rental of property received by the State through the munificence of the Federal government for aid in road-building is not to be paid into the State treasury, but a separate account thereof is to be kept by the Commissioner of State Highways, showing the amount received and the amounts disbursed of the funds received direct, or the proceeds of property donated under the Federal aid laws for the construction of public highways. If the State Highway Department, under the existing statute, *supra,* did not have authority to dispose of the

property after the same had come into its possession, then she had no authority under that act to accept the property in the first instance, and consequently had no title, either general or special, thereto, and hence could not maintain this action.

But we are convinced that, under a proper construction of the State statute and the Federal aid laws, the donation of the property in controversy and its acceptance thereof by the Commissioner of State Highways in compliance with the provisions of the Federal statutes, constitutes a donation or gift *in praesenti* to the State and vested the absolute title in the State, with the unlimited right of disposition through its Highway Department and the Commissioner thereof, when duly authorized so to do by the State Highway Commission. The donation of money or property under these Federal aid road building statutes is analogous to the grants of land by the United States Government to the State for school and other purposes. See *Myers* v. *Burns*, 19 Ark. 308; *Branch* v. *Mitchell*, 24 Ark. 331; *Ringo* v. *Rhoton*, 29 Ark. 56; *L. R. & F. S. Ry. Co.* v. *Howell*, 31 Ark. 119; *Hendry* v. *Willis*, 33 Ark. 833; *Chisholm* v. *Price*, 54 Ark. 251; *Hibben* v. *Malone*, 85 Ark. 584.

It does not follow, however, that, because the State had the absolute title and the unlimited right to dispose of the property that the act of her Commissioner in disposing of the property was binding upon the State unless he was authorized by law to make a lease or sale thereof in the manner indicated. As we have seen, the Commissioner of Highways, under the law, was the proper person to receive for the State the road aid funds donated to it by the Federal Government and to dispose of the same, and, as we have said, the power conferred upon him by this statute is ample to authorize him also to receive the donation of war materials such as the property in controversy, for use in the improvement of highways being constructed in whole or in part under the Federal aid laws. The uncontroverted testimony shows that the

State Highway Commission authorized the Commissioner to operate and handle the property in controversy. The testimony of the Commissioner and other witnesses as to the method of procedure and the facts relating thereto by which appellant obtained possession of the property, and showing the various steps taken by the Commissioner in disposing of the same to the appellees, is too voluminous to set forth and discuss in detail. It shows that, acting under authority of a resolution of the Highway Commission authorizing him so to do, the Commissioner leased the property in controversy to Hot Spring County, Arkansas, for a period of twenty years for the consideration of $9,250, and the county judge of Hot Spring County in turn, without any additional consideration, transferred and donated the property contained in the lease to the appellees. The appellees, in fact, paid the consideration mentioned, which was received by the Commissioner and the property delivered to the appellees. The uncontroverted testimony shows that the transaction was nothing more nor less than a sale of the property in controversy by the Commissioner to the appellees, and that the funds paid by them and received by him for the sale of the property went into the funds maintained by the Highway Department for the benefit of the highways. The law as to the receiving and disbursement of the funds was fully complied with. The Commissioner had a survey made of the property, and a preponderance of the evidence shows that the property in controversy at the time of its sale to the appellees was *unserviceable* and not suitable for general road building purposes in this State. The equipment was entirely too heavy, not of standard gauge, and was impractical to be used in building highways in the State of Arkansas. While the proof shows that the equipment was virtually new, nevertheless it was not serviceable for the building of highways in this State.

It will be observed that sec. 5 of act No. 159, approved March 15, 1920 (Wadsworth-Kahn act, *supra*)

provides that "no such vehicle and equipment in serviceable condition shall be sold or the title to the same transferred to any individual, company, or corporation." The language quoted necessarily implies that the State shall have authority to sell the property if it is in an *unserviceable* condition. From the proof in this record the Highway Commissioner was justified, as we have seen, in concluding that the property in controversy at the time of the sale thereof to the appellee was not in a serviceable condition. In coming to such conclusion he acted for and on behalf of the State, and the State is bound by his act. There is no proof of any fraudulent conduct by the Commissioner in the sale of the property.

Now, while the State does not hold the title in trust and while the *jus disponendi* is unrestricted, nevertheless the State cannot do wrong. Therefore she will see, and has the right to see, that her Highway Department through its State Highway Commission and its Commissioner duly constituted and authorized to receive and disburse the Federal aid to the building of highways, shall so administer the fund derived from the Federal Government as to carry out the intention of Congress in making the donation. The State therefore must see that the property received for road building purposes in this State is duly administered for such purposes. If therefore the officers of the State charged with the administration of such aid failed to dispose of the property received from the Federal Government in accordance with the acts of Congress making the donation to the State, their acts will be *ultra vires* and void, and the State may repudiate the same. But, as we have already shown, the acts of the officers of the Highway Department, its Commission and the Commissioner, were strictly in accord with the regulations of the Federal Government in the disposition of such property. Our conclusion, therefore, is that the learned chancellor erred in holding that the sale of the property by the State Highway Commission was unauthorized and contrary

to law and that no title passed to the appellees by virtue of such unauthorized act.

Having reached this conclusion, the other question passes out, and we do not decide whether, if the sale were void, the State would have to return to the appellees the consideration paid by them as a condition precedent to the recovery of the possession of the property. The decree is therefore reversed, and the complaint is dismissed for want of equity.

Mr. Justice HUMPHREYS not participating.